NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0308n.06
Filed: May 29, 2008

No. 07-5810

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DONNA WILSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF KENTUCKY |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER, CLAY, and COOK, Circuit Judges.

COOK, Circuit Judge. Donna Wilson appeals the denial of her claim for disability insurance

benefits by the Social Security Administration ("SSA"). Because substantial evidence supports the

SSA's decision, we affirm.

I

A procedural morass sets the stage for our review. Donna Wilson—fifty-five years old,

married, a former telephone operator—filed a claim for disability benefits with the SSA in 2003,

asserting that neck and back pain rendered her unable to work. The SSA denied her initial claim.

When Wilson filed for reconsideration, the SSA mixed the records of *another* Donna Wilson

with the claimant's files. *See* JA 193–208. Unlike the claimant, the other Wilson suffers from a

documented history of severe psychological and emotional problems. For example, her records show

she suffers from delusions of parasitic infections that drive her to sleep on her dining room table—"the only place she feels that does not have bugs." JA 198. These delusions led to the loss of her job, an involuntary commitment to a psychiatric ward, and prescriptions for a battery of anti-psychotic medicines.

Thinking these records for the other Donna Wilson belonged to the claimant, the SSA sent her to Dr. Jacob Muehleman (a psychologist) for a consultative evaluation. Dr. Muehleman wrote that during their meeting Wilson showed some anxiety, but otherwise appeared "clean," "bright" and "talkative," displayed intact memory and judgment, and reported "get[ting] along well with [her] family members, spouse and friends." JA 211–13. Morever, other than taking Xanax for her anxiety, Wilson stated she never suffered from mental or emotional problems.

Not surprisingly, Dr. Muehleman struggled to reconcile Wilson's normal behavior and functioning with the severe psychological problems documented in her mixed-up medical records. Facing a file that reflected a history of serious mental impairment, and not realizing that those records belonged to another patient, he found Wilson to be "perhaps markedly impaired" in her ability to deal with supervisors and "moderately impaired" in her ability to tolerate stress.

The SSA next sent Dr. Muehleman's report and Wilson's medical files to Dr. Dan Vandivier (another psychologist) for review. Giving Dr. Muehleman's flawed report "reasonable w[eigh]t," and after independently reviewing the flawed record, Dr. Vandivier concluded that Wilson's mental

ailments "moderately limited" her ability to "interact appropriately with the general public" and "to carry out detailed instructions." JA 232.

As for Wilson's physical limitations—which is what her claim centered on—a non-examining physician (Dr. Diosdado Irlandez) reviewed her medical records and opined that Wilson could perform light-duty work, including standing or sitting for long stretches and occasional crouching or kneeling.

After receiving these additional medical records, the SSA reaffirmed its decision to deny Wilson benefits. Wilson then appeared before an Administrative Law Judge ("ALJ") for a hearing, choosing to proceed without counsel. Wilson testified that she retired from Bell South in 2000 and began collecting a pension. She then drifted through several other jobs—casino change attendant, hotel desk clerk, pharmaceutical sorter, and window cleaner—until escalating neck and back pain disabled her in September 2004. In support of her testimony, Wilson submitted medical records that documented several doctors' visits for her pain.

Weighing the evidence, the ALJ concluded that Wilson could still work. As for physical ability, the ALJ found that the objective medical evidence did not support Wilson's claim that she suffers from disabling pain. Rather, crediting Dr. Irlandez's opinion, the ALJ found that Wilson could maintain light-duty employment.

As for mental ability, the ALJ also failed to identify the extra records erroneously mixed into Wilson's file. Thus, although Wilson did not testify that emotional or psychological problems limited her, the ALJ credited her with moderate limitations in her "ability to carry out detailed instructions" and to "interact appropriately with the public"—again, presumably based on the other Donna Wilson's records. JA 15. Despite these phantom limitations, the ALJ found, at step four of the five-step evaluation for disability benefits required by 20 C.F.R. §§ 404.1520 and 416.920, that Wilson could return to her previous job as a hotel desk clerk.[1]

After the ALJ denied benefits, Wilson appealed with the assistance of counsel. Her attorney, not recognizing that his client's files reflected the psychological impairments of a different woman, forwent the original basis for seeking benefits—Wilson's back and neck pain—and challenged only the ALJ's finding that Wilson possessed the mental ability to work as a hotel desk clerk.

The district judge referred this matter to a magistrate judge, who prepared a report and recommended denying benefits. The district court adopted the magistrate's recommendation and granted judgment in favor of the SSA. This appeal followed.

---

[1]In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id*. § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1).

Both parties continued to cite and rely on the "other Wilson's" medical records through their opening appellate briefs. While drafting his reply brief, Wilson's attorney finally noticed that fifteen pages of medical records in the claimant's file were those of a different Donna Wilson. Nevertheless, he wrote in his reply brief that it "is not likely that the inclusion of these documents in the Record made a difference in [the ALJ's] decision" as the ALJ only mentioned these records in passing. He failed to mention, however, that the ALJ relied heavily on the psychologists' reports, which in turn credited Wilson with some mental limitations on the basis of the erroneously included, inapplicable records. Now, on appeal, Wilson argues that those mental limitations preclude her from returning to work as a hotel clerk. The SSA filed a letter after receipt of the reply brief confirming that the records belong to another person, but "stipulat[ing] to Appellant's statement that, 'The erroneous inclusion of these medical records does not change the basic issues on this appeal.'"

In most cases, this comedy of errors would compel us to vacate and remand the case to the SSA in order to start the process anew. Here, however, the fate of Wilson's disability claim is clear—now that her attorney has withdrawn the records of the other Donna Wilson, the resulting file lacks any record of mental impairments that limit, much less disable, Wilson. Accordingly, we accommodate the parties' desire to proceed and, for the following reasons, affirm the judgment of the district court.

II

A

We must affirm the ALJ's conclusions unless he failed to apply the correct legal standard or made factual findings that are unsupported by substantial evidence. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence review is highly deferential, as we affirm any factual finding supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (citations omitted).

B

Wilson first complains that the ALJ neglected his duty to develop a full and fair record by insufficiently questioning her about her past work experience. To support this shifting of the burden, Wilson advances two theories. We discuss each in turn.

*Special Duty*. Though Wilson acknowledges that she carries the burden of establishing disability, *see* 20 C.F.R. § 404.1512(a), she relies on *Lashley v. Secretary of HHS*, 708 F.2d 1048 (6th Cir. 1983), to argue that a special, heightened duty required the ALJ to develop the record here. In *Lashley*, this court reversed a denial of disability benefits partly because the ALJ failed to develop "a full and fair record." *Id*. at 1051. In that case, however, the claimant was a 79 year-old with a fifth grade education, who after suffering two strokes had trouble reading, writing, and reasoning. *Id*. at 1049. At Lashley's hearing, the ALJ conducted a superficial examination that failed to heed the claimant's obvious confusion and inability to effectively present his case. *Id*. at 1052. Finding this process insufficient, the panel held that under special circumstances—when a claimant is (1)

without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures—an ALJ has a special, heightened duty to develop the record. *Id*. at 1051–52.

Absent such special circumstances—which do not exist in this case—this court repeatedly affirms that the claimant bears the ultimate burden of proving disability. *See, e.g.*, *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003). Though Wilson chose to proceed without counsel, the hearing transcript discloses her grasp of the proceedings and the adequacy of her case presentation to the ALJ.

*Failure to follow SSA regulations*. Wilson also contends that the ALJ contravened the SSA's own regulations by failing to adequately question Wilson about the mental demands of her past work, *see* 20 C.F.R. 404.1560(b)(2), and to develop and explain fully in the disability decision why Wilson retained the social skills necessary to return to her position as a hotel desk clerk, *see* Soc. Sec. Rul. 82-62, 45 Fed. Reg. 55566 (Aug. 20, 1980).

At the hearing, however, the ALJ probed Wilson several times about her past work and why she could not return to it. Wilson never suggested that she could not return to work as a result of mental or psychological limitations, such as the inability to interact with the public or handle stress. In other words, her own responses steered the ALJ away from asking about the mental demands of her previous jobs. For example, with respect to recent work she performed, Wilson claimed that she could not resume employment because her "body just couldn't do it." JA 350. When the ALJ asked why that precluded physically undemanding work—such as telephone operator—Wilson replied that

she could not find an employer in the area. Naturally, these responses triggered follow-up questions about Wilson's physical limitations and the availability of employers, rather than her mental capability. In light of Wilson's focus on her physical (rather than social or mental) limitations, we cannot agree with her criticism of the ALJ. We find that the ALJ did an adequate job questioning Wilson about the demands of her past work.

C

Wilson next argues that she did not work as a hotel clerk long enough to learn the skills to return to that position. In order for an ALJ to find that a claimant can return to past work, the claimant's past employment must meet certain conditions, including having "lasted long enough for [the claimant] to learn how to do it." 20 C.F.R. § 404.1565(a). Wilson argues that her time as a hotel clerk—two months and three weeks—fell seven days short of the three to six months the Dictionary of Occupational Titles ("DOT") states it takes the average worker to reach average performance as a hotel clerk. *See U.S. Dep't of Labor, Dictionary of Occupational Titles*, 238.367–038 (4th ed. 1991).

But Wilson reported to the SSA that she worked as a hotel desk clerk from "April 2002 - June 2002" and reported to Dr. Muehleman that she worked at the Executive Inn in Paducah for "two or three months." JA 213. At best, she left it ambiguous whether she worked that job for three

months or not.[2]    As "the claimant bears the burden of proving . . . that she is precluded from performing her past relevant work," that ambiguity is insufficient. *Jones v. Comm'r of Soc. Sec.*, 336 F. 3d 469, 474 (6th Cir. 2003).   The SSA gave Wilson multiple opportunities to provide more information, such as through a work history report that she completed.  When doing so, however, Wilson omitted the hotel clerk position.  The ALJ also asked her several questions at her hearing regarding her past work, but Wilson again failed to discuss working in a hotel.  Accordingly, Wilson failed to carry her burden of demonstrating she could not return to her hotel clerk position because of insufficient time on the job.

D

Finally, Wilson argues that the ALJ erred in concluding that Wilson possessed the necessary mental capacity to return to work as a hotel desk clerk.  The DOT classifies the hotel clerk position as "semi-skilled" and requiring steady interaction with the public. *See Dictionary of Occupational Titles* at 238.367–038.  Wilson contends that the ALJ's own findings regarding her mental capacity confirm that she cannot work such a position, harping on the ALJ's conclusion "that Ms. Wilson can perform some type of unskilled, simple work activity with infrequent interaction with others."  JA 17.  She reasons that the ALJ wrongly concluded she could resume working as a hotel clerk because

---

[2]After the ALJ issued his ruling, Wilson submitted an affidavit and pay stubs evidencing that she worked at the Executive Inn from April 8, 2002 to July 1, 2002.   See Dist. Ct. Dckt. No. 6. Because Wilson never placed this information before the ALJ, we may not consider it. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Nor has Wilson sought a "sentence six" remand to place this new evidence before the ALJ. *See* 42 U.S.C. § 405(g).

he mistakenly thought that hotel desk work requires unskilled labor and little interaction with the public.

Even if we assume that the ALJ erroneously thought hotel desk work requires only unskilled labor, that assumption fails to warrant a remand. In this particular case, the facts clearly compel us to find that such an error is harmless. *See Potter v. Comm'r of Soc. Sec.*, 223 F. App'x 458, 463–64 (6th Cir. 2007); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). First and foremost, the parties stripped from the record virtually all of the evidence that supported Wilson's claim of mental impairment—the medical records of the other Donna Wilson—after discovering the SSA's mix up. Second, Wilson's own statements throughout the application process belie her argument on appeal that she lacks the mental capacity to work as a hotel desk clerk. The ALJ, to take just one example, asked her, "What do you feel is your wors[t] problem that keeps you from working?" JA 353. Wilson responded with a litany of physical complaints—pain, lack of sleep, and headaches—without even mentioning an inability to interact with others, follow instructions, or complete mental tasks. Indeed when Dr. Muehleman quizzed Wilson regarding her mental health, she reported no history of psychological problems and no difficulty getting along with family and friends. So on the totality of this record, we find that substantial evidence supports the ALJ's conclusion that Wilson could return to work as a hotel desk clerk.

III

For the foregoing reasons, we affirm.

**CLAY, Circuit Judge, dissenting.** This case presents the question of whether the decision of an administrative law judge that was based largely upon the records of a person other than the claimant can be deemed to be supported by substantial evidence. Because I believe that this Court cannot affirm a decision based upon such a fundamentally flawed record without engaging in speculation and conjecture which usurps the agency's factfinding role, I respectfully dissent.

In light of the erroneous and undetected inclusion of another person's records in Plaintiff's file and the subsequent reliance upon these records by consulting physicians and Social Security Administration ("SSA") decision-makers, the ability of this Court to review the results of the administrative proceedings has been compromised. In order to affirm the administrative law judge's opinion, this Court is required to speculate as to what the examining or consulting physicians would have determined absent the erroneously included records, how the administrative law judge would have weighed those never-formulated opinions in reaching his decision, and whether the administrative law judge's hypothetical decision would be supported by substantial evidence. To engage in such far-reaching conjecture is to exceed our role as a reviewing court.

In addition to Plaintiff's medical records, the evidence before the administrative law judge erroneously included treatment records from Valley Health Medical Center for a different Donna Wilson who suffered from depression, anxiety and fixed delusional disorder. This error was only discovered by Plaintiff's counsel at the time the reply brief in this appeal was filed. Subsequently, counsel for the government acknowledged that the other Donna Wilson's records had been

erroneously mixed up with Plaintiff's medical records, obviously without the mix-up being detected by the government until after the reply brief was filed. It is difficult to believe that the decision-making of the medical experts and administrative law judge was unaffected by this records glitch when the government's lawyer himself was unable to detect the problem throughout the bulk of the proceedings. To think otherwise would be to unduly minimize the crucial nature of a patient's medical history in evaluating the patient's current medical condition. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 242 (6th Cir. 2002) (reversing the denial of social security disability benefits where the administrative law judge failed to take into account a significant portion of the claimant's medical history).

The records from Valley Health Medical Center significantly affected the consultative psychological evaluation that the SSA arranged for purposes of evaluating Plaintiff's social security disability claim. On March 24, 2005, Dr. Jacob Muehleman, a psychologist employed by the Kentucky Department of Disability Determination Services ("DDS"), conducted a psychological evaluation of Plaintiff. In addition to testing Plaintiff's memory and cognition, Dr. Muehleman took into account the mental health reports from the Valley Health medical records. In his assessment, Dr. Muehleman summarized the reports from Valley Health and noted that they were inconsistent with Plaintiff's description of her mental health history. Dr. Muehleman concluded from his evaluation that Plaintiff was not exhibiting any psychotic symptoms, but he was unsure whether Plaintiff was taking her prescribed medications. Dr. Muehleman summarized his assessment as follows:

> It is my observation from the history that she is not impaired in the ability to understand, retain and follow instructions or not impaired in ability to sustain attention to perform simple repetitive tasks and mildly impaired in the ability to relate to others and fellow workers and perhaps markedly impaired in the ability to deal with supervisors and moderately impaired in ability to tolerate stress and pressures associated with day-to-day work activity.

(A.R. 215.)

On April 8, 2005, without examining Plaintiff in person, DDS psychologist Dr. Dan K. Vandivier completed a "psychiatric review technique form" and determined Plaintiff's residual functional capacity.[3] Dr. Vandivier found that Plaintiff suffered from anxiety and depression and concluded that Plaintiff's mental impairment mildly restricted her performance of the activities of daily living, moderately impaired her social functioning, and moderately impaired her concentration, persistence or pace. It is impossible to determine to what extent Dr. Vandivier relied upon the erroneous Valley Health medical records in evaluating Plaintiff's residual functional capacity; however, it is clear that the residual functional capacity determination was largely based upon Dr. Muehleman's analysis, which in turn relied upon the Valley Health records. In evaluating Plaintiff's disability claim, the administrative law judge expressly relied upon Dr. Vandivier's conclusions, which were based in part on faulty evidence, stating that "the undersigned is persuaded by the opinion of the state agency psychologist who found a severe mental impairment with moderate

---

[3]On July 14, 2005, after the receipt of additional medical records from Plaintiff, DDS psychiatrist Dr. Alexis M. Guerrero also completed a psychiatric review technique form and determined Plaintiff's residual functional capacity. Dr. Guerrero adopted Dr. Vandivier's analysis in its entirety, and the administrative law judge cited solely to Dr. Vandivier's analysis.

limitations in functioning." (A.R. 16-17.) Thus, stripping the Valley Health medical records from Plaintiff's file would undermine the entire basis for the administrative law judge's decision.

The majority attempts to discount the impact of the erroneously included records on the validity of the agency's decision by asserting that without "the records of the other Donna Wilson, the resulting file lacks any record of mental impairments that limit, much less disable, Wilson." Maj. Op. p.5. However, even absent the erroneously included records regarding Plaintiff's mental health, there remains ample evidence in the administrative record that Plaintiff has suffered from anxiety and depression. Plaintiff had a history of taking Xanax, Valium and Ambien for anxiety, depression and sleeplessness. In the course of her evaluation by Dr. Muehleman, Plaintiff explained that "[s]he does get frustrated easily, nervous, confused, and feels kind of high-strung." (A.R. 214.) Plaintiff's therapist, Robert O'Brien, diagnosed her with adjustment disorder with depressed mood and noted that she was easily frustrated. In her appeal of the denial of disability benefits, Plaintiff complained of difficulties concentrating, remembering, and handling stress. Without further factfinding below, and in view of the confusion in the record, this Court cannot independently conclude that Plaintiff's mental impairments are not severe enough to preclude her from performing her past relevant work.

The majority also relies on the fact that Plaintiff believed that her most serious ailment was her physical impairment and not mental illness. However, Plaintiff's subjective belief about the comparative severity of her impairments does not preclude the administrative law judge from coming to a different conclusion based upon objective medical evidence. Although Plaintiff's medical

records, however inaccurate and incomplete, give some indication of the extent of her mental health issues, no detailed evaluation of Plaintiff's mental health has been conducted based entirely upon her correct medical records. The examining and consulting physicians have had no opportunity to evaluate Plaintiff's medical condition utilizing her accurate medical records and taking into account her actual medical history. *See* 20 C.F.R. § 416.920a(c)(1) ("Assessment of functional limitations is a complex and highly individualized process that requires [the SSA] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation."). Again, this Court cannot decide this case without engaging in speculation regarding the outcome of a proper medical evaluation of Plaintiff.

Unfortunately, the majority opinion is an exercise in speculative over-reaching. The majority claims that any error committed by the administrative law judge was harmless because the correct record of Plaintiff's medical impairments is insufficient to show that she lacked the mental ability to work as a desk clerk. This conclusion is based upon the facts as found by the majority and not by the administrative law judge. In effect, the majority reaches a conclusion on an issue not decided in the first instance by the agency: whether the actual Donna Wilson (as opposed to some composite of two different social security claimants) is disabled within the meaning of the Social Security Act. This action by the Court is contrary to longstanding Supreme Court precedent. *Gonzales v. Thomas*, 547 U.S. 183 (2006) (requiring remand where the resolution of a matter not decided in the first instance by the agency "requires determining the facts and deciding whether the facts as found fall within a statutory term"); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (In

reviewing an agency's disposition of a matter entrusted to it by statute, this Court "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."); *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) ("[A] judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency.").

Regardless of whether the administrative law judge would find for Plaintiff on remand, this Court is not in the position to weigh the evidence on the revised record and independently determine whether Plaintiff is entitled to disability benefits. Rather than engage in an awkward attempt to separate and unscramble the medical records of two individuals and then attempt to reach a conclusion that we believe would have been arrived at by the decision-makers below, we should simply remand with instructions that the administrative law judge straighten out the record and conduct the proper proceedings before reaching his or her decision, which we can then review on appeal, if necessary. We should not "accommodate the parties' desire to proceed," Maj. Op. p. 5, by failing to remand where doing so is contrary to controlling precedent and well-established principles of judicial review. For these reasons, I dissent.