NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0325n.06

No. 14-1610

**FILED**
May 04, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RICKY A. STRANG, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:    SILER, BATCHELDER, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Ricky Strang claims a back injury left him unable to work. He applied for disability insurance benefits and supplemental security income, but the state agency responsible for reviewing disability benefits applications denied his application. At a hearing challenging that denial, an administrative law judge repeatedly told Strang she would procure certain documents from his family physician, Dr. Jack Wagner, and enter those documents into the record. Several times during the hearing, the ALJ characterized the documents from Dr. Wagner as being crucial to her decision. The record does not show, however, that the ALJ procured the documents from Dr. Wagner, or reflect an explanation for their absence from the record. A remand is accordingly necessary.

Strang worked as a car detailer, janitor, and, most recently, at a tool and die shop. He was 31-years-old when he fell at home and injured his back, an injury he claims left him unable

to engage in competitive work. On March 19, 2007, shortly after Strang's fall, Dr. Cliff Alan diagnosed Strang with spondylolysis and spondylolisthesis.

In April of 2010, after years of on-and-off treatment from various physicians, Strang began treatment at Wellness Family Practice ("Wellness"). Wellness eventually referred Strang for physical therapy and Dr. Jack Wagner, Strang's family physician at Wellness, referred Strang to a few pain management clinics. Strang began attending physical therapy in May 2010, but it did not go well. In July 2010, he reported to his family physician—either Dr. Wagner or someone else at Wellness—that physical therapy was actually making his pain worse, prompting his family physician to recommend that Strang discontinue therapy. Strang subsequently discontinued physical therapy, at which point his physical therapist prepared a discharge summary. The discharge summary stated that Strang's functioning and mobility were independent with pain; that his pain was a 5 out of 10; that his straight-leg raise was 50 degrees on the right side and 43 degrees on the left; that he was not progressing; that his rehabilitation potential was "poor to guarded;" and that he "has little strength in bilateral lower extremities with exception of hips, but [was] unable to meet other long term goals due to early discharge and poor prognosis."

Sometime in late 2010 or 2011, Strang saw Dr. Wagner again. During this visit, Strang says, Dr. Wagner performed a checkup on Strang's back and also discussed with Strang the possibility of finding a surgeon to operate on Strang's back. The administrative record does not contain any documentation of this meeting between Strang and Dr. Wagner.

Strang applied for disability insurance benefits and supplemental security income on July 18, 2010, asserting that he had been unable to work since June 15, 2007 due to spondylolisthesis in his low back. On December 16, 2010, the state agency responsible for reviewing disability

benefits applications denied Strang's application. Strang requested an administrative hearing to appeal that decision.

On September 12, 2011, Strang appeared before an ALJ. Observing that Strang was not accompanied by a lawyer, the ALJ informed Strang of his right to representation. In the course of doing so, the ALJ explained that, if Strang chose to proceed without an attorney, "then I would ask questions at today's hearing, and if there are medical records missing from your file, then our office would request those on your behalf." R. 8-2, PgID 55. Strang opted to proceed without an attorney and signed a waiver to that effect.

The ALJ began the hearing by asking Strang about his educational and work experiences, then turned to Strang's medical history. In discussing Strang's medical history, the ALJ asked about Dr. Wagner:

> [ALJ]: And then your actual treating doctor is through Wellness Family Practice?
>
> [Strang]: Dr. Wagner, yeah.
>
> [ALJ]: Okay.
>
> [Strang]: That's my family doctor.
>
> [ALJ]: Have you talked to Dr. Wagner about working?
>
> [Strang]: Yeah.
>
> [ALJ]: What does he or she say?
>
> [Strang]: He said, "I don't know how you can." Because like when he feels my back, you can feel like just the knots like right on the side of my spine.
>
> [ALJ]: Okay. So, he's told you that he doesn't think you should work?
>
> [Strang]: Hmm-hmm.
>
> . . .
>
> [ALJ]: And when was the last time you saw Dr. Wagner?
>
> [Strang]: I was in there like a month or so – a month, about a month ago.

> [ALJ]: Okay. Great. So, one thing we will do today is make sure that we get that updated record.
>
> [Strang]: Okay.
>
> [ALJ]: So, I will have you sign an authorization, which just gives me permission to read your private medical records.
>
> [Strang]: Okay.
>
> [ALJ]: And then I will send a form to Dr. Wagner, called a medical source statement, which would ask him to just kind of write down some details about what he thinks about what you should or shouldn't be able to do.

*Id.* at PgID 60-61. In addition to Dr. Wagner's opinion, Strang also recommended that the ALJ solicit the opinion of Strang's physical therapist. *Id.* at PgID 62.

The ALJ and Strang then discussed the various treatments Strang had undergone. Strang reported that he had tried cortisone injections, physical therapy, and various pain relievers, but that the cortisone injections had been ineffectual and the pain relievers had "mess[ed] with [his] mind" to the point that he had quit using them. Strang also reported that, although he had quit using pain relievers because of the side effects, "the pain [from his injury] was just too much," which had prompted his doctor to recommend medical marijuana. Strang explained that he had used medical marijuana for the previous two years and that, while the marijuana helped with the pain, it did "something to him like psychologically."

> The ALJ then returned to asking about Dr. Wagner:
>
> [ALJ]: Okay. And when you went to see your family doctor, Dr. Wagner, you said maybe within the past couple of months, what kind of things are you seeing him for? Is it for pain management or for just general checkups or what?
>
> [Strang]: Checkups and we're trying to find another doctor – he's looking into having the surgery done to have the disc fused back together.
>
> [ALJ]: Okay.
>
> [Strang]: So, a lot of it's that, too, that I see him for.

*Id.* at PgID 66.

After Strang testified that he had been disqualified for surgery and acupuncture because he used medical marijuana, the ALJ once again brought up Dr. Wagner:

[ALJ]: Okay. So, right now you're at the point where you're working with Dr. Wagner to try and find some other kind of treatment that you can do.

[Strang]: Right.

[ALJ]: Okay. So it sounds like it would be pretty important for me to get Dr. Wagner's records and see what's going on.

[Strang]: Right.

[ALJ]: Okay. All right. I will do that before I make any decision in the case.

[Strang]: Okay.

[ALJ]: And, certainly, we'll get that.

*Id.* at PgID 69.

Strang went on to testify about his home life and functional abilities. He explained that he is married and has three children, ages six, 14, and 16. His wife works, so that, during the summer, Strang watches the children. Strang said that a typical day for him, when school is in session, is to "sit down and be bored." He talked about growing his own marijuana, noting that his 16-year-old son helps with most of the growing tasks. He explained that, although he can still drive a car, he does not do so often. He also reported that he can lift 20-30 pounds routinely; that he can sit comfortably for a couple of minutes, even if standing is more comfortable; that he alternates from sitting to standing to limit his pain; and that he sleeps in a recliner to take pressure off his back.

Strang then further discussed Dr. Wagner's role in his treatment, noting that, although Dr. Wagner was not prescribing Strang anything for pain management, Dr. Wagner had been working to "find out something to do to help [Strang] with [his] back," including "trying to get [Strang] to the surgeon." After the ALJ confirmed with Strang that he had been unable to work,

earn money, or return to his former occupation since injuring his back, the ALJ concluded

Strang's testimony by adverting, yet again, to the importance of getting an opinion from Dr.

Wagner:

> [ALJ]: So, what I am going to do is ask our vocational expert a series of questions with kind of hypothetical restrictions that you might have. And since I don't have anything updated from how you've been doing, I really don't know what ultimately you will be.
>
> [Strang]: Okay.
>
> [ALJ]: And Dr. Wagner's opinion will help me figure that out. So, if you do go back to Dr. Wagner, you might want to mention to him, you know, how important it is for him to fill this out and all that kind of stuff.

*Id.* at PgID 74-75.

After taking testimony from a vocational expert, and just before adjourning the hearing,

the ALJ twice more explained her intention to obtain what she characterized as the "important"

information from Dr. Wagner. First, the ALJ emphasized to Strang that, "Most important, while

you're thinking, so I will definitely get information from Dr. Wagner and from Evergreen

[Physical Therapy]." *Id.* at PgID 81. Then, after noting that the record did not include anything

more recent than Strang's July 2010 exam, the ALJ reiterated that, "we will definitely want to

get the more recent stuff from Dr. Wagner that would include, at least, his attempts to try and get

you that [surgical] consult." *Id.* at PgID 82.

In a December 30, 2011 decision, the ALJ found that Strang was not disabled for

purposes of the Social Security Act. The ALJ's decision became the Commissioner's final

decision on January 23, 2013, when the Social Security Administration's Appeals Council

denied Strang's request for review. On March 22, 2013, Strang filed this suit against the

Commissioner in federal district court, seeking review of the ALJ's decision.

The district court referred the matter to a magistrate judge, who recommended the district court affirm the ALJ's denial of benefits. In so doing, the magistrate judge expressly rejected each of Strang's arguments for reversing the ALJ. Most pertinent for present purposes, the magistrate judge rejected Strang's argument that the ALJ had failed to adequately develop "a full and fair" administrative record by failing to procure the missing records from Dr. Wagner. *Strang v. Comm'r of Soc. Sec.*, No. 13-11270, 2014 WL 1207870, at *8-*9 (E.D. Mich. Mar. 24, 2014). The magistrate judge stated that, under Sixth Circuit precedents, a claimant bears the burden of developing a record adequate to support his claim of disability, except in the limited circumstance where a claimant represents himself, is incapable of presenting an effective case, and is unfamiliar with hearing procedures. *Id.* at *8. Based on the record, the magistrate judge found that Strang demonstrated some familiarity with the process and ability to present his case, so that the burden of developing the record rested on him. *Id.* The magistrate judge further observed that, regardless of who bore the burden of developing the record, all of the evidence that Strang claimed had been wrongfully omitted from the record had either been incorporated into the record or had been shown to be of next to no probative value. *Id.* at *8-*9.

The magistrate judge similarly rejected Strang's contention that the ALJ erred by failing to consider or assign weight to the opinion of Strang's unnamed physical therapist. *Id.* at *9-*10. The magistrate judge pointed out that a physical therapist "is not considered either a 'treating source' or an 'acceptable medical source,'" so that, under controlling regulations, the ALJ did not have to provide "good reasons" for declining to give weight to the therapist's opinion. *Id.* at *10. Instead, according to the magistrate judge, the ALJ had only to "evaluate the opinions expressed by [the physical therapists] on 'key issues.'" *Id.* The magistrate judge determined that, although the ALJ's discussion of Strang's physical therapy was extremely

cursory, it was legally sufficient because it made "clear that the ALJ reviewed and assessed the notes of the physical therapist in determining" Strang's residual functional capacity. *Id.* at \*11. The magistrate judge explained, "substantial evidence support[ed] the ALJ's rationale for finding [Strang] capable of performing light work." *Id.*

The district court adopted the magistrate judge's report and recommendation. *Id.* at \*1. Strang appeals that decision, raising the same arguments he made to the district court.

Remand is warranted in this matter because, by telling Strang she would procure certain documents for the record and then failing to follow through, the ALJ effectively deprived Strang of a full and fair hearing. At several points during the hearing, the ALJ told Strang that she would procure records on his behalf—in particular, records from Strang's most recent visit to his family physician, Dr. Wagner. *See, e.g.*, R. 8-2 PgID 55, 61, 62, 81, 82. The ALJ assured Strang that she would make sure to procure and review the missing records from Dr. Wagner "before I make any decision in this case." *Id.* at PgID 69. But the ALJ never explained the absence of additional records from Dr. Wagner in the record; in fact, there is no evidence she even sought them out.

Throughout the hearing, the ALJ emphasized to Strang how important the new records from Dr. Wagner were to her decision. At one point, for example, the ALJ observed, "So, it sounds like it would be pretty important for me to get Dr. Wagner's records and see what's going on." *Id.* Later, she told Strang, "Most important . . . I will definitely get information from Dr. Wagner." *Id.* at PgID 81. From the ALJ's remarks, it appears the records from Dr. Wagner would have—or at least could have—been of significance to her evaluation.

In these circumstances, the ALJ must obtain the records or at least explain their absence. The Commissioner is correct that it is generally true that the claimant bears the burden of

establishing his disability. *See Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); 20 C.F.R. § 404.1512(a). The ALJ, however, must "develop [a claimant's] complete medical history" and "make every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1512(d). This duty to develop a full and fair administrative record is heightened—although it does not remove the burden of proof from the claimant—when the disability claimant is not represented by counsel at the administrative hearing. *See Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008). Further, beyond the normal duty to develop the administrative record, an ALJ self-imposes a special duty to obtain records by, as here, frequently noting their importance to the resolution of the claim and committing to obtaining them. As the Ninth Circuit stated in *McLeod v. Astrue*, 640 F.3d 881 (9th Cir. 2010) "the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* at 885 (internal quotations omitted). To ensure that the ALJ has fulfilled his duty to conduct an appropriate inquiry, he "should include documentation of all attempts to obtain the evidence an exhibit in the record." Social Security Administration, Office of Hearings and Appeals, HALLEX 1-2-5-1, Evidence—General (2008).

It is also true that we subject claims of this sort to a harmless error analysis. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009). "Accordingly, if an agency has failed to adhere to its own procedures, we will not remand for further proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Id.* (internal quotation marks omitted). In a situation where the ALJ agrees to procure more information for the record and fails to do so, however, "[t]he lack of

medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits." *Brown v. Shalala*, 44 F.3d 931, 935-36 (11th Cir. 1995). This court has "no way of knowing whether the evidence from this case would sustain [Strang's] contentions," but, "in the absence of proof to the contrary . . . we must assume that it does lend credence" to those contentions. *Id.* at 936.

Even though Strang's most recent visit to Dr. Wagner was not for treatment or pain management, Dr. Wagner's notes and observations from that visit might have affected the ALJ's decision, particularly given the ALJ's comments. Checkups and consultations can yield reliable information about a person's medical status as much as appointments for treatment or pain management. Strang said that his most recent visit to Dr. Wagner was both a "checkup" and a consultation for purposes of "looking into having the surgery done to have the disc fused back together." Such an examination could have yielded valuable evidence about Strang's physical condition. That Dr. Wagner did not prescribe anything for Strang during his most recent visit or otherwise treat Strang's back during the visit does not mean he did not evaluate and examine the status of Strang's injury in a way that would allow him to opine on the nature of that injury. Some information from Dr. Wagner might well have been of value.

The Commissioner suggests that, because the ALJ made good on her promises with respect to the physical therapist's notes, it stands to reason that she also made a good-faith effort to track down and consider the missing information from Dr. Wagner, but that suggestion is wholly speculative.

The Commissioner also argues that all of Dr. Wagner's notes and observations— including any from Strang's most recent visit—are already in the record. But there is no way of telling from the record that this is true. Although, to be sure, some documents from Dr. Wagner

are in the record, there is nothing in the record from Dr. Wagner from August 2011, when he most recently met with Strang.

Because remand is warranted on the basis of the ALJ's failure to procure certain documents for the record, we need not consider Strang's argument that the ALJ was required to give a fuller explanation regarding the little weight given the assessment of Strang's condition by his physical therapist. It is sufficient for us to note that our review would be assisted if the ALJ on remand gave a fuller explanation of why she gave little weight to that assessment. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

Two other arguments that Strang makes on appeal are without merit. For the reasons given by the lower court, we reject Strang's argument that the ALJ improperly failed to comment on or assign any weight to the opinion of Dr. Wagner that was recounted second-hand by Strang. *Strang*, 2014 WL 1207870 at *9. We also reject, for the reasons given by the lower court, Strang's argument that the ALJ improperly discounted Strang's credibility because of his failure to seek substantial medical treatment. *Id.* at *11-*13.

The judgment of the district court is vacated and this case is remanded to the district court with instructions that it be further remanded to the ALJ for proceedings consistent with this opinion.