**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GENE R. MCLEOD,
              *Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security
Administration,
              *Defendant-Appellee.*

No. 09-35190

D.C. No.
9:07-CV-52-JCL

ORDER AND
AMENDED
OPINION

On Appeal from the United States District Court
for the District of Montana
Jeremiah C. Lynch, Magistrate Judge, Presiding

Argued and Submitted
January 14, 2010—Seattle, Washington

Filed December 16, 2010
Amended February 4, 201
Second Amendment May 19, 2011

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Kleinfeld

## COUNSEL

Paul B. Eaglin, Eaglin Law Office, Fairbanks, Alaska, for the appellant.

Jennifer Randall, Special Assistant United States Attorney, Social Security Administration, Office of the General Counsel, Denver, Colorado, for the appellee.

## ORDER

Appellee's petition for rehearing is granted in part and denied in part.

The opinion filed on December 16, 2010 and amended February 4, 2011 is amended as follows:

At 2207-8 of the amended slip opinion, strike the following two sentences:

> The district court reviewing a Social Security determination "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The ALJ's failure to help McLeod develop the record by putting his VA disability determination into the record is "good cause" under Tonapetyan, and the disability

determination is "material" under McCartey, so the district court should remand for this purpose.

Replace them with:

We remand under sentence four of 42 U.S.C. § 405(g), concluding that "the agency erred in some respect in reaching a decision to deny benefits."[32] The ALJ's failure to help McLeod develop the record by putting his VA disability determination into the record was an error under *Tonapetyan* and *McCartey*, so the district court should remand.

The amended opinion is filed concurrently with this Order. No further petitions for rehearing or petitions for rehearing en banc will be entertained.

---

## OPINION

KLEINFELD, Circuit Judge:

We address harmless error in the context of Social Security disability.

### I. Facts

Gene R. McLeod applied at age 51 for supplemental security income based on disability. The Administrative Law Judge (ALJ) found that he had three severe impairments—degenerative changes of the lumbar spine, history of coronary artery disease, and sleep apnea—but none so severe as to rise to the level of "listed" impairments. He lacked significant protrusion or herniation of the discs or compression of the nerve root where there was narrowing at L4-5, and catheterization

---

[32]*Hoa Hong Van v. Barnhart*, 483 F.3d 600, 605 (9th Cir. 2007) (quoting *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002)).

had restored him to asymptomatic condition regarding his heart. The ALJ found that McLeod's medically determinable impairments could be expected to produce his symptoms, but his "statements concerning intensity, duration and limiting effects of these symptoms are not entirely credible." One of McLeod's treating physicians said that he was "very debilitated" and another said he was "unemployable." But the ALJ rejected these opinions insofar as they addressed employability, because they gave a conclusory opinion on employability, the Commissioner's bailiwick, and "are not function-by-function analyses of the claimant's residual functional capacity." The ALJ found that McLeod could not perform his past work as a bartender, breakfast cook, groundskeeper, or golf pro shop clerk, but had sufficient functional capacity to perform such work as gambling cashier, telephone solicitor, and order clerk, all sedentary jobs with minimal lifting and bending, allowing for sitting and standing within McLeod's limitations. The district court denied McLeod's petition for review.

The medical record, consisting mostly of information from McLeod's treating physicians and physicians to whom his treating physicians referred him for consultation at Department of Veterans Affairs facilities, was mixed as to the severity of McLeod's condition. A neurosurgeon to whom McLeod was referred said that McLeod had "no muscle weakness" and recommended against surgery because of the unlikelihood of improvement "particularly with unsettled litigation and his pain behavior on examination." The VA Neurosurgery Chief wrote that McLeod's spinal canal was "open throughout his lumbosacral region" (which means no compression on account of narrowing) and that "he has some evidence of degenerated discs but there is not any evidence of nerve root compression from these discs." One treating physician at the VA said that because McLeod had "back pain with minimal activity," and "any work he has done exacerbates the problem," he was "unemployable." But another treating VA physician said McLeod should be restricted to "light manual sedentary" work, rather than no work at all.

McLeod's appeal focuses on the ALJ's failure to develop the record further regarding his veteran's disability and medical condition. McLeod testified that he received a $296 non-service-connected pension, based on unemployability, from the VA. When the ALJ asked him if he had a VA disability rating, he answered, "I have no idea, Your Honor." The record does not reveal whether the VA found McLeod partially or entirely disabled. No evidence of his disability rating was submitted to the Social Security Administration at any stage of the proceedings, or to the district court. Based on McLeod's testimony about his "pension," there is a fair chance he has a disability rating, but the record shows neither that he has one nor what it is.

Though McLeod had only a lay representative before the VA, he was represented by an attorney in district court and is represented, by different counsel, here.

## II.   Analysis

McLeod argues under *Tonapetyan v. Halter*[1] that the ALJ erred by failing to develop the record adequately. According to McLeod, the ALJ should have requested more explanation from two of his treating physicians at the VA, Dr. Dietz and Dr. Rossetto, about his ability to work. McLeod also argues that the ALJ should have obtained whatever VA disability rating McLeod might have.

**[1]** The ALJ had no duty to request more information from the two physicians. It appears from the record that substantially all of their medical records throughout the time they treated McLeod were before the ALJ. There was nothing unclear or ambiguous about what they said. They both thought McLeod had a bad lower back condition, based on his symptom reports, their examinations, and objective medical tests. Dr. Dietz thought McLeod could do sedentary work, and

---

[1]242 F.3d 1144 (9th Cir. 2001).

Dr. Rossetto thought McLeod could not work at all. As for the ALJ rejecting Dr. Rossetto's opinion on whether McLeod could work at any job, he was correct that this determination is for the Social Security Administration to make, not a physician. "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."[2] McLeod argues that Dr. Rossetto's opinion could be read as an evaluation of his "functional exertional capacity" rather than a conclusion on his ability to work, but we do not agree. The words are clear and unambiguous: an "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."[3]

[2] A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one. An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity. The "relationship between impairment and disability remains both complex and difficult, if not impossible, to predict. . . The same level of injury is in no way predictive of an affected individual's ability to participate in major life functions (including work) . . . Disability may be influenced by physical, psychological, and psychosocial factors that can change over time."[4] The law reserves the disability determination to the Commissioner.[5] Rejection of

---

[2]*Id.* at 1148; 20 C.F.R. § 404.1527(e)(1).

[3]*Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (the ALJ did not have a duty to recontact doctors before rejecting parts of their opinions).

[4]American Medical Association, *Guides to the Evaluation of Permanent Impairment*, 5-6 (6th ed. 2008).

[5]20 C.F.R. § 404.1527(e)(1).

the treating physician's opinion on ability to perform any remunerative work does not by itself trigger a duty to contact the physician for more explanation.[6]

[3] The issue of the VA disability rating is more complex. The record suggests a likelihood that McLeod has some sort of VA disability rating, yet does not show what it is. That McLeod failed to submit the rating to the ALJ is not the end of the matter.

[4] The ALJ has a duty to conduct a full and fair hearing.[7] We held in *Tonapetyan v. Halter*[8] that "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."[9] The ALJ must be "especially diligent" when the claimant is unrepresented or has only a lay representative, as McLeod did.[10] A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy.[11]

[5] The record here was inadequate. McLeod testified that he was receiving a VA pension based on unemployability, but that he had no idea whether he had a disability rating. This testimony suggests a likelihood that he had one. If he did, it might very well matter.

[6] We held in *McCartey v. Massenari*[12] that "although a VA rating of disability does not necessarily compel the SSA

---

[6]20 C.F.R. §§ 404.1512(e), 416.912 (e).

[7]*Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.1996) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

[8]242 F.3d 1144 (9th Cir. 2001).

[9]*Id.* at 1150 (citing *Smolen*, 80 F.3d at 1288) (quotation marks omitted).

[10]*Id.* (citing *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)).

[11]*Id.*

[12]298 F.3d 1072 (9th Cir. 2002).

to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision"[13] and the ALJ "must ordinarily give great weight to a VA determination of disability."[14] That is not to say that the VA rating is conclusive. In *McCartey*, we commented that "because the VA and SSA criteria for determining disability are not identical,"[15] the record may establish adequate reason for giving the VA rating less weight. In some circumstances, the VA may assign a partial rather than a total disability rating to a veteran,[16] and a partial disability rating might cut against rather than in favor of an SSA determination that the individual could not perform remunerative work of any kind.

Even though it is not binding or conclusive, the VA disability rating has to be considered. The ALJ did not mention it in her decision and did not consider it. No doubt she failed to consider the VA rating because it was not in the record and she did not know what disability rating if any the VA had assigned to McLeod. Nevertheless, she erred by not trying to get whatever VA disability rating existed.

**[7]** We must apply the holding in *McCartey*, that the VA disability rating must be considered and ordinarily must be given great weight, together with the holding in *Tonapetyan*, that inadequacy of the record to allow for proper evaluation triggers a duty of inquiry. These two holdings taken together establish that when the record suggests a likelihood that there is a VA disability rating, and does not show what it is, the ALJ has a duty to inquire. McLeod might have had a letter

---

[13]*Id.* at 1076.

[14]*Id.*

[15]*Id.*

[16]*See* 38 C.F.R. §§ 4.1 (explaining that VA disability percentage ratings represent the average impairment in earning capacity resulting from diseases and injuries), 4.15 (limiting VA total disability ratings to "any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation").

from the VA telling him what his disability rating was, or providing him with the basis on which he got his pension, that he could have brought in had the ALJ given him a continuance and told him to bring in his letter. Alternatively, the ALJ could have obtained McLeod's disability rating herself.[17] Then she could have evaluated his disability properly under *Tonapetyan*. By failing to obtain and consider McLeod's VA disability rating, the ALJ erred, denying him the "full and fair hearing" to which he was entitled.

That leads us to the next question, what we are to do about the error. We still do not know what determination the VA made regarding McLeod's claimed disability. We therefore do not know whether the ALJ's failure to obtain the rating caused McLeod any harm.

**[8]** The answer to what we must do about the error is provided by a recent Supreme Court decision, *Shinseki v. Sanders*.[18] In *Sanders*, the VA had denied disability benefits to two veterans, Woodrow Sanders and Patricia Simmons, because the record failed to adequately support their claims. In one instance, the VA had told the veteran what additional information was needed, but failed to specify what portion of that evidence the veteran would be responsible for providing. In the other, the VA failed to tell the veteran what information she needed to provide and failed to notify her of a relevant medical exam the VA had scheduled on her behalf. In both instances, the VA failed to perform its duty to help a veteran develop his claim.

**[9]** The Court held that to determine whether the error caused prejudice the Veterans Court was to "apply the same kind of 'harmless-error' rule that courts ordinarily apply in

---

[17]38 C.F.R. § 1.506 (stating that VA records required for official purposes will be furnished to any other agency of the U.S. Government "in response to an official request, written, or oral").

[18]129 S.Ct. 1696 (2009).

civil cases."[19] The Court went further, holding that the burden is on the party attacking the agency's determination to show that prejudice resulted from the error.[20] Overruling the Federal Circuit, the Court held that prejudice cannot be presumed from any kind of error.[21] Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm. The first veteran had not told the Veterans Court, the Court of Appeals, or the Supreme Court what specific evidence he would have sought, had the VA told him he needed it, and the Court denied relief. The second veteran's record suggested the error might have been harmful, so the Court required a remand to the Veterans Court, even though she had not shown what additional evidence she might have submitted. The distinction the Court drew appears to be that in the case of the second veteran, some "features of the record suggest" that the error was prejudicial.[22]

[10] We conclude that *Sanders* applies to Social Security cases as well as VA cases. In both, the agency has a duty to help the claimant, so the Social Security Administration's duty to assist claimants[23] does not distinguish the cases. The Veterans Court has a statute providing for a harmless error rule[24] and the Social Security statute does not so provide,[25] but this makes no difference, because the Court held that all the Veterans Court statutory provision did was import the Administrative Procedure Act rule and the general federal rule for civil cases.[26] The Court cited 28 U.S.C. § 2111, under which the

---

[19]*Id.* at 1704.

[20]*Id.* at 1705-06.

[21]*Id.* at 1705.

[22]*Id.* at 1708.

[23]*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

[24]38 U.S.C. § 7261(b)(2).

[25]We, however, apply harmless error in the Social Security context. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

[26]*Shinseki v. Sanders*, 129 S.Ct. 1696, 1704 (2009). The Supreme Court has stated that it "need not decide whether the APA has general applica-

harmless error rule applies to "any" case. The Court limited a burden on the party seeking to uphold a decision to show absence of prejudice to appropriate criminal cases.[27]

But *Sanders* does not mean that the claimant necessarily has to show what other evidence could have been obtained. Despite its generalizations about the burden to show prejudice, the Court directed remand to the Veterans Court in one of the two cases before it, even though that veteran had not shown what additional evidence she might have to show harm. The Court held that although some features of the record suggested that the error was harmless, others suggested the opposite, and "[g]iven the uncertainties, we believe it is appropriate to remand this case so that the Veterans Court can decide whether re-consideration is necessary."[28]

**[11]** We infer from *Sanders* that, despite the burden to show prejudice being on the party claiming error by the administrative agency, the reviewing court can determine from the "circumstances of the case"[29] that further administrative review is needed to determine whether there was prejudice from the error. Mere probability is not enough. But where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency "can decide whether re-consideration is necessary."[30] By contrast, where harmlessness is clear and not a "borderline question,"[31] remand for reconsideration is not appropriate.

---

tion to social security disability claims, for the social security administrative procedure does not vary from that prescribed by the APA. Indeed, the latter is modeled upon the Social Security Act." *Richardson v. Perales*, 402 U.S. 389, 409 (1971).

[27]*Shinseki v. Sanders*, 129 S.Ct. 1696, 1706 (2009).

[28]*Id.* at 1708.

[29]*Id.* at 1706.

[30]*Id.* at 1708.

[31]*Id.*

**[12]** Though the exact distinction between the two veterans in *Sanders* is not crystal clear, it is quite clear that no presumptions operate, and we must exercise judgment in light of the circumstances of the case. In this case, the circumstances suggest prejudice at least as strongly as for the veteran whose case was remanded in *Sanders*. McLeod's physicians differ in their evaluations, and McLeod's testimony, if true, establishes that the VA has made some sort of disability determination. Because we give VA disability determinations great weight, failure to assist McLeod in developing the record by getting his disability determination into the record is reasonably likely to have been prejudicial. We remand under sentence four of 42 U.S.C. § 405(g), concluding that "the agency erred in some respect in reaching a decision to deny benefits."[32] The ALJ's failure to help McLeod develop the record by putting his VA disability determination into the record was an error under *Tonapetyan* and *McCartey*, so the district court should remand.

REVERSED.

---

[32]*Hoa Hong Van v. Barnhart*, 483 F.3d 600, 605 (9th Cir. 2007) (quoting *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002)).