**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MUHAMMAD CHAUDHRY,
          *Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,
          *Defendant-Appellee.*

No. 11-35072

D.C. No.
2:09-cv-03089-JPH

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
James P. Hutton, Magistrate Judge, Presiding

Argued and Submitted
January 12, 2012—Seattle, Washington

Filed August 10, 2012

Before: Diarmuid F. O'Scannlain and Johnnie B. Rawlinson,
Circuit Judges, and Donald W. Molloy, District Judge.*

Opinion by Judge Rawlinson

*The Honorable Donald W. Molloy, United States District Judge for the
District of Montana, sitting by designation.

**COUNSEL**

Appellant Muhammad Chaudhry is represented by Jeffrey H. Baird, Dellert Baird Law Office, Port Orchard, Washington.

Appellee Michael J. Astrue, Commissioner of the Social Security Administration, is represented by Gerald J. Hill, Assistant Regional Counsel, Social Security Administration, Seattle, Washington.

**OPINION**

RAWLINSON, Circuit Judge:

Appellant Muhammad Chaudhry (Chaudhry) appeals the district court's grant of summary judgment in favor of Appellee Michael J. Astrue, Commissioner of the Social Security Administration (Commissioner). Chaudhry argues that the Administrative Law Judge (ALJ) erred in finding that Chaudhry is not disabled as defined in the Social Security Act (Act). We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I.  BACKGROUND

Chaudhry was thirty-two years old when he allegedly became disabled in 2005. Chaudhry had earned a general college degree in his native Pakistan, and performed past relevant work as a fast-food worker, sales clerk, cashier, waiter, and housekeeper/cleaner. He served in the United States Army from January 22, 2002, to August 20, 2002, and from November 15, 2003, to February 25, 2005. Chaudhry injured his back while serving in the army in 2004. He also suffers from migraine headaches, narcolepsy, and depression.

### A. VA Evaluations

Following Chaudhry's back injury, several medical providers assessed him in June, 2004. According to Dr. John D. Werschkul, Chaudhry's 2004 MRI showed mild protrusion and no need for surgery. Dr. Werschkul also indicated that Chaudhry's neurological exam was negative. Provider[1] Beverly Scott assessed Chaudhry with frequent migraine headaches without aura, and noted that Chaudhry's brain MRI was within normal limits. Provider Bernard Roth indicated that there was a very high likelihood that Chaudhry had narcolepsy. Dr. Juliana Ellis-Billingsley observed intermittent depression. According to Dr. Ellis-Billingsley, the intermittent depression did not diminish Chaudhry's job performance, nor did it limit his ability to do well in civilian life, because he was exceptionally bright and had a good entrepreneurial spirit. Provider Brian Woebkenberg noted an absence of objective findings that would support Chaudhry's complaint of radicular[2] symptoms. Provider Helen Holt assessed Chaudhry with chronic back pain with bilateral radiculopathy[3], and noted that his gait was steady.

In July, 2004, Provider James Chambers assessed Chaudhry with degenerative disc disease, but opined that Chaudhry was not a candidate for surgery. Provider Roger Barstaad noted in October, 2004, that a radiograph of Chaudhry's cervical spine showed vertebral body heights and disk spaces

---

[1]Because the record is unclear as to the exact status of the various medical care providers, we refer to them as providers unless otherwise indicated.

[2]Radicular is defined as relating to a radicle, which in turn is defined as "[a] rootlet or structure resembling one, as the r. of a vein, a minute veinlet joining with others to form a vein, or the r. of a nerve, a nerve fiber that joins others to form a nerve." *Stedman's Medical Dictionary* 1502 (27th ed. 2000) (emphasis omitted).

[3]Radiculopathy is a "[d]isorder of the spinal nerve roots." *Id.* at 1503. Bilateral means "[r]elating to, or having, two sides." *Id.* at 202.

within normal limits and unremarkable atlanto-axial joints.[4] Provider Barstaad noted that the chiropractic clinic would cancel the rest of Chaudhry's visits, and "[t]he patient's reaction to his first visit and his extraordinary high pain complaints coupled with his extraordinarily low ranges of motion make this a highly 'interesting' case. . . ." Provider Barstaad suspected "phycogenic overlay."[5] Provider Vancil McNulty observed in November, 2004, that Chaudhry exhibited chronic pain with fear avoidance, oversensitivity to pain, and L5-S1 disc protrusion.

Clinic notes indicate that Chaudhry was walking with a cane in November, 2004. However, Provider Holt noted that Chaudhry's gait was steady that month. In addition, Provider McNulty told Chaudhry that a cane is not indicated for individuals with low back pain. Provider McNulty suspected that "long term use of the cane will further encourage pain and disabled behaviors. . . ." A physical therapist also advised Chaudhry to discontinue use of the cane. Records indicate that Chaudhry did not follow through with a plan of care after being seen by neurology providers.

A December, 2004, note indicated that although no issues besides sinus surgery prevented Chaudhry from deploying to Iraq, Chaudhry stated that he was unable to function at any job. At the same time, Chaudhry denied depression. Dr. Marcus Ponce De Leon noted that Chaudhry's narcolepsy prevented him from driving or performing any duties that require a high degree of vigilance or prolonged wakefulness.

---

[4]Atlanto-axial is defined as "[p]ertaining to the atlas and the axis; denoting the joint between the first two cervical vertebrae." *Id.* at 163.

[5]It appears that the record contains a typographical error, and that Provider Barstaad suspected a psychogenic overlay, which is defined as "[t]he aggravation of the symptoms and complaints in a case of a physical ailment beyond the usual or what one would expect, due to the emotional involvement of the patient." J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine and Word Finder* Vol. 5, 517 (1999).

The following year, in October, 2005, Chaudhry deferred examination by Provider Madelyn McKennan, but requested a prescription for a cane, which McKennan wrote for him. The next month, Chaudhry appeared in a wheelchair for an appointment.

Dr. Raymond Rosenfeld reviewed x-rays of Chaudhry's lumbar spine in December, 2005, and found vertebral body heights and disk spaces within normal limits. Dr. Dianne Flynn assessed chronic pain syndrome in January, 2007. In November, 2007, Dr. Flynn examined Chaudhry and noted that she had a long discussion with him about establishing goals.

The Department of Veterans Affairs (DVA) reviewed and evaluated Chaudhry's disabling impairments in January, 2007, following Chaudhry's filing of a Notice of Disagreement with his disability rating.[6] Chaudhry's sequence of impairments and corresponding disability ratings was: migraine headaches 30% disabling; intervertebral disc syndrome of the cervical spine 30% disabling; depression 50% disabling; intervertebral disc syndrome of the thoracolumbosacral spine 20% disabling; and narcolepsy 20% disabling. Depression was listed as 30% in the section heading, but the explanation noted that it had been increased to 50% in 2006. Chaudhry's Global Assessment of Functioning (GAF) was 55, "indicative of moderately severe social and occupational functioning."

### B.    Examining Consultants

Dr. Marie Ho reviewed Chaudhry's medical records and

---

[6]A Notice of Disagreement is "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result . . ." 38 C.F.R. § 20.201. A Notice of Disagreement is required to appeal a DVA decision. *See* 38 C.F.R. § 20.200.

conducted a physical examination on May 10, 2008. Dr. Ho observed that Chaudhry was in a wheelchair, had severe low back pain, appeared anxious, and could not perform certain tests, not necessarily due to lack of effort, but perhaps due to pain and inhibition. Chaudhry responded slowly to instructions and moved slowly, but was generally cooperative with testing. Dr. Ho's testing was limited by Chaudhry's inability to stand or walk. Dr. Ho also noted "some inconsistencies . . ."

Dr. Ho determined that Chaudhry could stand and walk fewer than 2 hours cumulatively per day and sit longer than 6 hours; lift less than 10 pounds occasionally and frequently, due to lumbar spine problems; and should not engage in any crouching, squatting, or kneeling. Dr. Ho also indicated that Chaudhry's depression might further limit his ability to function in the workplace.

Jenifer Schultz, Ph.D., conducted a psychological examination and took Chaudhry's history. Dr. Schultz's diagnostic impressions included somatization disorder;[7] depressive disorder not otherwise specified; and dependent personality traits. According to Dr. Schultz, "[a]lthough [Chaudhry] has many medical conditions, his physical complaints are in excess of what would be expected from the history; such as being in a wheelchair for pain. He fulfills criteria for Somatization Disorder. . . ." Dr. Schultz noted that Chaudhry had no insight into his condition and felt helpless. Dr. Schultz was of the view that Chaudhry's prognosis was poor because Chaudhry did not believe that he could improve.

---

[7]Somatization disorder is "a mental disorder characterized by presentation of a complicated medical history and of physical symptoms referring to a variety of organ systems, but without a detectable or known organic basis." *See Stedman's Medical Dictionary* at 528.

### C.    Non-Examining Consultants

Dr. Patricia Kraft, a reviewing physician, reviewed Chaudhry's medical records from January 26, 2006, through May 21, 2008. Dr. Kraft noted non-specific depression and dependent personality traits. Dr. Kraft observed many contradictions in the medical record, such as Chaudhry's use of a cane for low back pain. Dr. Kraft rated Chaudhry's Functional Limitations as follows: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Dr. Kraft acknowledged diagnoses of depression and somatoform disorder, but considered the diagnoses to be theoretically incompatible, because somatoform represses depression. Dr. Kraft recognized a 90% disability rating based on Dr. Flynn's report in July, 2006. Dr. Kraft rated Chaudhry's psychological impairments as "nonsevere." Dr. Kraft wrote that Chaudhry did not comply with recommended treatment or attend the pain clinic; repeated mental status examinations yielded normal results; muscle atrophy in legs was not noted despite Chaudhry's claim of having been wheelchair bound for three years; and there was a lack of medical support for the extent of Chaudhry's alleged dependency on his wife.

Dr. Norman Staley reviewed Chaudhry's medical records from January 26, 2008, through June 5, 2008. Dr. Staley found some abnormal disc findings, but was of the view that Chaudhry had chronic pain syndrome[8] and was abusing both the Veterans Affairs and Social Security systems. According to Dr. Staley, Chaudhry's medical record did not support Chaudhry's use of a wheelchair or his inability to cooperate with Dr. Ho's consultative examination.

---

[8]Chronic pain is "pain that persists after an injury heals . . ." 4 *Gale Encyclopedia of Medicine* 2142 (1999).

Chaudhry's treating physician, Dr. Flynn, examined Chaudhry in 2008 for complaints of wrist pain. Dr. Flynn noted "[n]o wrist pain, swelling or stiffness, no wrist joint pain, no swelling of the wrist joint, and no stiffness of the wrist joint." Under the Action Plan section, Dr. Flynn wrote "Carpal Tunnel Syndrome: Trial of night splints. [Return to clinic] if unimproved 3-4 weeks. Education."

### D.  Social Security Application and ALJ Hearing

Chaudhry alleged that he became unable to work because of his disability on February 26, 2005. Chaudhry's claim was denied on January 24, 2008, and denied on reconsideration on June 5, 2008. At Chaudhry's request, the ALJ held a hearing.

At the hearing, Chaudhry testified that he had to spend much of the day lying down, due to back pain and headaches. Chaudhry testified that his narcolepsy caused him to fall asleep approximately twice a day and that his pain medication made him drowsy. Chaudhry also testified that he used a wheelchair and a cane to move around, and that he last walked without a cane in 2003. Chaudhry testified that he was prescribed the wheelchair in 2004. According to Chaudhry, he was receiving a veterans' pension based on the DVA's determination that he was 100% disabled.

In response to the ALJ's hypothetical question and Residual Function Capacity (RFC) assessment, Vocational Expert Sharon Welter (VE) testified that Chaudhry could perform all of his past work as well as alternative light exertion jobs existing in the hundreds of thousands.

### E.  ALJ's Decision

The ALJ applied the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act. At step one, the ALJ found that Chaudhry had not engaged in substantial gainful activity since Feb-

ruary 26, 2005, his alleged onset date of disability. At step two, the ALJ found that Chaudhry had the severe impairments of chronic pain syndrome, degenerative disc disease, headaches, and narcolepsy.

The ALJ found that Chaudhry's "medically determinable mental impairment of depressive disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." The ALJ reached this conclusion upon consideration of "the four broad functional areas set out in the disability regulations . . ."

In the first functional area, activities of daily living, the ALJ found mild limitation. Based upon the opinion of Dr. Kraft and the evaluation of Dr. Schultz, the ALJ found Chaudhry's allegations to not be fully credible and concluded that Chaudhry's "attitude contributes to his limitations far more than his actual physical abilities. . . ."

In the second functional area, social functioning, the ALJ also found mild limitation. The ALJ noted that Chaudhry had repeatedly declined Dr. Flynn's recommendation of counseling. According to the ALJ, "it appears that the claimant's outlook affects his determination as much or more than any physical or mental impairment."

In the third functional area, concentration, persistence, or pace, the ALJ similarly found mild limitation. The ALJ noted Dr. Schultz's finding that Chaudhry's "concentration and attention were fair, and that his persistence is affected by the fact that he generally does not attempt activities. . . ." The ALJ also noted Dr. Flynn's unheeded encouragement to establish goals and see a psychologist, and Dr. Kraft's finding of mild limitation based on her review of the record.

In the fourth functional area, episodes of decompensation, the ALJ found no indication of limitation. Thus, the ALJ found the mental impairment to be non-severe.

At step three, the ALJ found that Chaudhry did not have an impairment or combination of impairments that met or equaled the criteria of one of the *per se* disabling impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ then found that Chaudhry had the residual functional capacity to perform light work, except that Chaudhry was unable to climb ramps, stairs, ladders, ropes, or scaffolds; he could not stoop, kneel, crouch, or crawl more than occasionally, but could balance frequently; and he could not tolerate exposure to hazardous machines and unprotected heights.

The ALJ explained that Chaudhry's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment."

With respect to Chaudhry's claim of depression, the ALJ noted Dr. Ellis-Billingsley's diagnosis of depression and her opinion that it did not impair Chaudhry. The ALJ also noted that Chaudhry declined to see a psychologist after Dr. Schultz's diagnosis of depressive disorder. The ALJ therefore concluded that Chaudhry's "failure to seek treatment for depression places the severity of the symptoms into question. In addition, no examining source has opined that the claimant is unable to work or [is] otherwise limited because of his depression. . . ." According to the ALJ, Chaudhry's "allegations of limitation lack credibility to the extent they are inconsistent with the assessed RFC."

In addressing Chaudhry's back pain, the ALJ concluded that "the objective medical evidence does not support the level of limitation alleged." The ALJ noted that Chaudhry used a cane and a wheelchair, even though no medical source recommended such use. The ALJ noted Dr. Ho's opinion that "Chaudhry appeared not to exert adequate effort at times, although [Dr. Ho] acknowledged that it might be due to pain

or inhibition. . . ." The ALJ noted that Dr. Ho's lower RFC was "based in part on the claimant's statements that he could not walk or stand; no objective evidence supports those statements" and that "Dr. Ho also believed that the claimant's wheelchair and single-point cane were prescribed. . . ."

According to the ALJ, "it appears that [Chaudhry] has not made any attempt to increase his functionality, instead relying solely on medication for pain. None of his treating sources have stated that he requires his wheelchair or that his condition is disabling. . . ." The ALJ also noted that "Dr. Flynn repeatedly encouraged him to develop goals for better functionality, but stated in September 2008 that he had made no significant progress in that area. . . ."

The ALJ gave greater weight to Dr. Staley's opinion of Chaudhry's capabilities than to Dr. Ho's, because Dr. Ho's "opinion regarding [Chaudhry's] limitation in standing and walking was based primarily on his self-report of limitations; he stated he was unable to stand and walk due to back pain and migraines. Because no objective medical evidence supports his allegation, Dr. Ho's resulting assessment is likewise given less credibility. . . ." In general, the ALJ found that Chaudhry's "allegations of limitation lack credibility to the extent they are inconsistent with the RFC . . ."

The ALJ did not consider Chaudhry's alleged carpal tunnel syndrome because the ALJ found that there was no official diagnosis of carpal tunnel syndrome and the condition had not lasted more than 12 months.

The ALJ noted that during the hearing Chaudhry's representative stated that the DVA assessment was 100%. The ALJ responded that:

> [t]he DVA assessed the claimant's migraine headaches as 30% disabling, intervertebral disc syndrome of the cervical spine as 30% disabling, depression as

> 30% disabling, intervertebral disc syndrome of the lumboscacral spine as 20% disabling, and narcolepsy as 20% disabling. The DVA determined that the claimant is not 100% disabled in any of these areas. Further, the DVA did not consider the cumulative effect of these impairments as 100% disabling. The claimant filed a Notice of Disagreement with the DVA's action. If the DVA had assessed the claimant as 100% disabled, as stated by the client's representative, it is unlikely that the claimant would have appealed such a decision.

In sum, the ALJ determined that Chaudhry's impairments notwithstanding, Chaudhry had the capacity to perform light work, with specified limitations.

At step four, the ALJ determined that Chaudhry's residual functional capacity did not preclude him from performing his past relevant work as a fast food worker, sales clerk, cashier, waiter, and housekeeper/cleaner.

At step five, the ALJ relied on the testimony of the VE to alternatively find that other jobs existed in significant numbers in the national economy that Chaudhry could perform, considering his age, education, work experience, and residual functional capacity, and the additional requirement that he be able to choose whether to sit or stand. Therefore, the ALJ found that Chaudhry was not disabled as defined in the Social Security Act.

The Appeals Council declined Chaudhry's request for administrative review.

## F.    *District Court's Decision*

The assigned magistrate judge granted the Commissioner's motion for summary judgment and denied Chaudhry's motion for summary judgment.

The magistrate judge found that the ALJ did not err in evaluating the severity of Chaudhry's psychiatric impairments, based on the ALJ's analysis of Dr. Schultz's and Dr. Kraft's opinions, and considering Chaudhry's lack of credibility. The magistrate judge also found that the ALJ did not err in giving less weight to Dr. Ho's and Dr. Schultz's opinions when determining Chaudhry's RFC. Likewise, the magistrate judge found no error in the ALJ's credibility determination in light of Chaudhry's inconsistent statements, failure to comply with medical treatment, and other objective evidence in the record. The magistrate judge further found that the ALJ did not err in considering the DVA disability rating, and that the ALJ properly placed greater weight on evidence that contradicted the rating.

The district court subsequently entered judgment in favor of the Commissioner.

## II. STANDARD OF REVIEW

We "review de novo a district court's judgment upholding the denial of social security benefits. . . ." *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted). We "will set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Id.* (citation and internal quotation marks omitted). "[E]ven if the ALJ erred, we will uphold the decision so long as the error was harmless." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (citation omitted).

## III. DISCUSSION

### A. DVA Disability Rating

Chaudhry argues that, under our holding in *McLeod v. Astrue*, 640 F.3d 881 (9th Cir. 2011), *as amended*, the ALJ committed reversible error by not obtaining Chaudhry's disability determination from the DVA.

**[1]** In *McLeod*, we held that "although a VA rating of disability does not necessarily compel the SSA to reach an identical result, the ALJ must consider the VA's finding in reaching his decision and the ALJ must ordinarily give great weight to a VA determination of disability. . . ." *Id.* at 886 (footnote reference omitted). "[W]hen the record suggests a likelihood that there is a VA disability rating, and does not show what it is, the ALJ has a duty to inquire. . . ." *Id.*

**[2]** One crucial distinction between this case and *McLeod* is that the claimant in *McLeod* was represented by a lay representative. *See id.* at 885 ("The ALJ must be especially diligent when the claimant is unrepresented or has only a lay representative, as *McLeod* did . . . .") (footnote reference and internal quotation marks omitted). *McLeod*'s holding that "[t]he ALJ must be especially diligent when the claimant is unrepresented . . ." *id.*, does not apply here because Chaudhry was represented by counsel before the ALJ. As we noted in McLeod, because the record was "inadequate to allow for proper evaluation of the evidence . . . the ALJ's duty to conduct an appropriate inquiry" was triggered. *Id.* (footnote reference omitted). Here, because the evidence of the VA disability rating was part of the record, the record was adequate to allow the ALJ to properly evaluate Chaudhry's claim. The ALJ's duty to inquire further did not arise, and unlike in *McLeod*, the ALJ's duty to be especially diligent in the case of an unrepresented claimant did not apply. Under these circumstances, the ALJ conducted the "full and fair hearing" required. *Id.*

Another distinction is that in *McLeod*, "[n]o evidence of [the claimant's] disability rating was submitted to the Social Security Administration at any stage of the proceedings, or to the district court . . . ." *Id.* at 884. In contrast, Chaudhry submitted the DVA report specifying his disability determination. Unlike *McLeod,* where the claimant "ha[d] no idea" whether he had a DVA disability rating, *id.*, Chaudhry testified before the ALJ as to his alleged 100% DVA disability rating. How-

ever, the record did not support Chaudhry's contention. As the ALJ noted, logic dictates that Chaudhry would not have challenged the DVA determination, as he did, had the DVA awarded a 100% disability rating and granted a pension. Importantly, as we noted in *McLeod*, "a partial disability rating might cut against rather than in favor of an SSA determination that the individual could not perform remunerative work of any kind." *Id.* at 886.

Unlike in *McLeod*, the record in this case was adequate for the ALJ to consider the DVA's determination, and the ALJ properly considered the record evidence of that determination. In *McLeod*, the record was unclear as to the *existence* of a DVA rating, whereas here the only question was the *extent* of the DVA rating. In his opinion, the ALJ directly addressed the DVA report in the record, Chaudhry's testimony, and the medical records describing a DVA disability rating. The ALJ properly considered the full scope of the record evidence as to the DVA rating and properly considered the extent of disability suggested by that rating. *Cf. id.* (explaining that the VA disability rating must be considered and noting that the ALJ "did not mention it in her decision").

**[3]** Review of the facts in this case leads us to conclude that *McLeod* does not control the outcome and that the ALJ adequately considered the VA disability rating.

## B. Severity Determination

Chaudhry argues that the ALJ failed to properly evaluate the severity of Chaudhry's impairments. Chaudhry specifically challenges the ALJ's evaluation of Dr. Schultz's finding of somatization disorder and non-specific depression.

**[4]** When evaluating psychiatric impairments such as somatization disorder and depression, the ALJ must follow a "special psychiatric review technique" and document his findings and conclusions in his decision. *Keyser v. Comm'r Soc.*

*Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (citation omitted) ("Specifically, the written decision must incorporate the pertinent findings and conclusions based on the technique and must include a specific finding as to the degree of limitation in each of the functional areas . . .") (citations, emphasis, and internal quotation marks omitted).

**[5]** As required by our holding in *Keyser*, the ALJ documented his application of the psychiatric review technique and his specific finding as to the degree of limitation in each functional area. The ALJ explicitly discussed Dr. Schultz's statement that Chaudhry's "physical complaints are in excess of what would be expected from the history, such as being in a wheelchair for pain" which formed the basis for Dr. Schultz's diagnosis of somatization disorder. The ALJ also addressed Dr. Schultz's conclusions regarding Chaudhry's dependence on his wife. The ALJ noted his agreement with Dr. Kraft, who contradicted Dr. Schultz's diagnosis of somatoform disorder, because, according to Dr. Kraft, that diagnosis is incompatible with a finding of depression. Unlike in *Keyser*, the ALJ did not fail to document his analysis of Chaudhry's alleged psychiatric impairments. The ALJ's analysis is supported by the record evidence.

## C.  *Rejection of Medical Examiners' Opinions*

Chaudhry argues that, in the process of making the RFC determination, the ALJ provided inadequate reasons for rejecting the opinions of Dr. Ho and Dr. Schultz. Chaudhry asserts that Dr. Ho's opinion was based on her observation of Chaudhry and her review of Chaudhry's x-rays and MRI results. In Chaudhry's view, Dr. Ho's opinion carried more weight than Dr. Staley's because Dr. Ho saw Chaudhry in person. Likewise, Chaudhry contends that Dr. Schultz's opinion carries more weight than Dr. Kraft's because Dr. Schultz saw Chaudhry in person and Dr. Kraft did not.

**[6]** Because the RFC determination must take into account the claimant's testimony regarding his capability, the ALJ

must assess that testimony in conjunction with the medical evidence. "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . ." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009), *as amended* (citations and internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Id.* (citation and internal quotation marks omitted).

**[7]** "Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict. . . ." *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. . . ." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation and alteration omitted).

**[8]** When weighing the medical evidence as part of assessing the claimant's testimony regarding the severity of his impairments, the ALJ gave Dr. Ho's opinion less weight than Dr. Staley's opinion because the ALJ concluded that Dr. Ho's opinion "was based primarily on [Chaudhry's] self-report of limitations." As the ALJ noted, Dr. Ho's opinion was predicated in part on her erroneous belief that Chaudhry's wheelchair and cane were prescribed. Chaudhry's non-prescribed

use of a wheelchair and a cane also factored into the ALJ's determination that Chaudhry's subjective expression of his limitations lacked credibility. The ALJ's conclusion was supported by the observations of many of the providers who evaluated Chaudhry, including Dr. Ho's own observation that Chaudhry appeared not to exert adequate effort during testing. Dr. Staley's finding of chronic pain syndrome was echoed by many of Chaudhry's other providers or reviewers, including his treating physician, Dr. Flynn. We therefore conclude that the ALJ properly relied on medical evidence that undermined Chaudhry's subjective assessment of his limitations.

Because Dr. Ho and Dr. Staley both based their opinions on Chaudhry's x-rays and MRI, Chaudhry's use of a wheelchair appears to have been the primary difference between their conflicting opinions. Because the ALJ's conclusions are supported by the record, and because the ALJ provided specific and legitimate reasons supported by substantial evidence to give less weight to Dr. Ho's opinion, we conclude that the ALJ did not err in basing the RFC on Dr. Staley's findings rather than Dr. Ho's.

**[9]** The ALJ gave Dr. Schultz's opinion less weight than Dr. Kraft's because of Dr. Kraft's conclusion that Dr. Schultz's diagnosis of somatoform disorder was incompatible with depression. As the ALJ noted, the record reflects that other providers or reviewers agreed that Chaudhry's alleged depression did not constitute an impairment and that Chaudhry repeatedly failed to seek treatment for his depression. We conclude that the ALJ did not err in basing the RFC on Dr. Kraft's opinion rather than Dr. Schultz's.

Chaudhry disagrees with the ALJ's determination that he lacked credibility. Chaudhry argues that any lack of credibility is explained by the dependency and somatization found by Dr. Schultz. Likewise, Chaudhry contends that the reviewing physicians' finding of malingering is outweighed by the examining physicians' opinions.

The ALJ must support his credibility finding "with specific, clear and convincing reasons." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citation omitted).[9] "The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted). "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. . . ." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citation omitted).

**[10]** Chaudhry's effort to explain away his lack of credibility is unavailing. As discussed, Dr. Schultz's diagnosis of somatization disorder was based on Chaudhry's use of a wheelchair, which itself demonstrates his failure to follow the advice of providers who told him he did not need a wheelchair or a cane. It stands to reason that the ALJ's finding that Chaudhry was not credible is not undermined by the diagnoses that themselves stemmed from Chaudhry's lack of credibility. Rather, the ALJ's credibility finding is clearly, specifically, and convincingly supported by the record.

---

[9]The Commissioner urges us to conclude that the record demonstrates malingering and therefore that the ALJ need not provide clear and convincing reasons for rejecting Chaudhry's testimony. But, the ALJ did not rely on evidence of malingering to support his credibility determination, so the "clear and convincing" standard applies to our review of the ALJ's determination. *See Taylor*, 659 F.3d at 1234.

The record also reflects the observations of several providers that Chaudhry's complaints of depression lacked objective support and that Chaudhry repeatedly failed to seek treatment for depression or follow prescribed courses of treatment. *See Tommasetti*, 533 F.3d at 1039. This record evidence bolsters the ALJ's finding.

### D. *Carpal Tunnel Syndrome*

**[11]** Chaudhry argues that the ALJ erroneously stated that there was no formal diagnosis of carpal tunnel syndrome because Dr. Flynn examined Chaudhry for wrist pain and made a finding of carpal tunnel syndrome. However, the ALJ's finding that there was no official diagnosis of carpal tunnel syndrome is confirmed by Dr. Flynn's notes. Furthermore, even if there were an official diagnosis in the record, there is no evidence, as the ALJ noted, that the condition would last more than 12 months, as required by 42 U.S.C. § 423(d)(1)(A). In sum, the record does not reflect objective medical evidence of carpal tunnel syndrome, and the ALJ therefore properly determined Chaudhry's RFC.

### IV. SUMMARY

We affirm the ALJ's decision. The ALJ conducted a full and fair hearing in light of the fact that the record contained evidence of the VA disability rating and the ALJ discussed the extent of the disability suggested by that rating in his decision. The ALJ also properly documented his analysis of Chaudhry's alleged psychiatric impairments and his analysis was supported by the record. Likewise, the ALJ's interpretation of the medical evidence was supported by the record, as was his credibility determination.

**AFFIRMED.**