**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ADAM JOSEPH SIEVERS, | No. 17-35056 |
| Plaintiff-Appellant, | No. 3:15-CV-02185-AA |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Ann Aiken, District Judge, Presiding

Submitted May 10, 2018[**]

Before: TROTT, SILVERMAN, and TALLMAN, Circuit Judges.

Adam Sievers appeals the district court's affirmance of the Commissioner of

Social Security's denial of his application for disability insurance benefits and

supplemental security income under Titles II and XVI of the Social Security Act.

---

[*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). We review de novo. *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016). We have examined the record as a whole and conclude that the district court's opinion and order affirming the Commissioner's decision is correct. Thus, we affirm.

## I

At the center of Sievers's appeal is his claim that the ALJ "improperly rejected" the opinions of his treating physicians Dr. Michael Moore and Dr. Holly Faber. We address each in turn.

### Dr. Moore

The ALJ did not err by affording treating physician Dr. Moore's opinion "limited weight." Dr. Moore could not provide a specific diagnosis and did not indicate which medical evidence he relied upon – if any – in arriving at his opinion. An ALJ "may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citations omitted).

In addition, the ALJ did not err by not evaluating Dr. Moore's opinion in accordance with Social Security Ruling 03-2p for Complex Regional Pain Syndrome ("CRPS"). Dr. Moore said, "I do not think that he is malingering,

though I am unable to provide a specific diagnosis." His failure to provide a specific diagnosis is telling because CRPS is susceptible of explicit identification. Social Security Ruling 03-2p ("The Ruling") indicates that a diagnosis of CRPS "requires the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region." The Ruling explains the complaints of pain are associated with:

- Swelling;

- Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), skin temperature changes, or abnormal pilomotor erection (gooseflesh);

- Abnormal hair or nail growth (growth can be either too slow or too fast);

- Osteoporosis; or

- Involuntary movements of the affected region of the initial injury.

Nothing in Dr. Moore's information suggests the presence of these associated symptoms.

In his opening brief, Sievers argues that Dr. Moore's opinion is tantamount to a diagnosis of CRPS "as required by the Ruling." In his reply brief, he argues the failure of Sievers's doctors to agree on the exact name of his diagnosis does not

3

invalidate the functional limitations described by Dr. Moore. The fact remains that Dr. Moore was "unable to provide a specific diagnosis" of CRPS.

### Dr. Faber

Dr. Faber's input consisted of a one-paragraph letter opining that Sievers "cannot work at any job involving any hand use, including but not limited to typing, faxing, filing, scanning, copying, etc." However, she also indicated that he had "undergone an extensive work-up without any clear etiology identified." Dr. Faber did not tender any testing, medical, or treatment information with her letter. She further indicated that "there is no diagnostic certainty at this point," but that she *suspected* CRPS.

The ALJ gave "little weight" to Dr. Faber's opinion, for three reasons: 1) a lack of diagnostic certainty, 2) a lack of objective medical evidence or probative testing results in the record, and 3) the claimant's evidence that he was able to use his hands in the activities of his daily living. Moreover, Dr. Faber's opinion appeared to rely solely on Sievers's subjective complaints.

An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation omitted). Dr. Faber's letter falls into this category.

As to Sievers's recitation of his symptoms and limitations, the ALJ found him only "partially credible" because 1) the evidence showed his "activities of daily living are wide," and 2) his testimony was "outweighed by the objective medical evidence in the record." The ALJ pointed out inconsistencies in Sievers's testimony, conflicts between Sievers's testimony and reported daily activities, and a lack of supporting medical evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). The ALJ's impression of his testimony was that he "appeared to exaggerate his symptoms." While Sievers advances an alternative interpretation of the evidence, his presentation does not change the fact that the ALJ's interpretation was rational.

The ALJ's partial credibility finding reflects negatively upon Dr. Faber's symptoms-based statement about Sievers's ability to work. The ALJ cited specific, clear, and convincing reasons for discounting Sievers's claims. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citation and internal quotation marks omitted).

A "suspicion" of a condition, i.e., CRPS, is not evidence of such. Accordingly, the ALJ did not err in giving Dr. Faber's suspicion and conclusion "little weight." His reasons for so doing were clear, specific, and supported by the record. Consequently, we uphold the ALJ's interpretation of this evidence.

## II

### A.

The ALJ's errors in assessing the lay witness testimony from Sievers's sister, Mara Sievers, and his mother, Kathy Sievers, were harmless. The ALJ misattributed a spreadsheet prepared by Kathy Sievers to Mara. The spreadsheet compared Sievers's ability to engage in certain tasks from 2009 to 2011. Nevertheless, the error was harmless because the "same evidence that the ALJ referred to in discrediting [Sievers's] claims also discredits [his mother's] claims." *Molina*, 674 F.3d at 1121-22. In addition, although the ALJ's reason for discounting Mara's statements, i.e., her close relationship with her brother, is not a proper reason for rejecting lay witness testimony, *see Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017), Mara's statements described the same limitations as Sievers's own testimony. The ALJ's reasons for rejecting Sievers's statements "apply with equal force to the lay testimony." *See Molina*, 674 F.3d at 1122. Therefore, this error was harmless.

**B.**

The ALJ misidentified Dictionary of Occupational Titles ("DOT") listing 359.567-014 as the listing for tanning salon attendant, when this listing actually refers to the semi-skilled job weight-reduction specialist, which Sievers does not have the skills to perform. Nevertheless, the vocational expert identified, and the ALJ relied upon, two other DOT listings, rendering the error harmless. *See id.* at 1115.

**C.**

Given our resolution of Sievers's main contentions, we find no error in the ALJ's determination of his residual functional capacity or in the hypothetical proposition put to the vocational expert. Accordingly, after considering the record as a whole, we conclude that the Commissioner's decision is supported by substantial evidence and based upon proper legal standards.

**AFFIRMED.**