NOT FOR PUBLICATION

FILED

DEC 22 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RACHEL L. YANCHAR, | No. 15-35286 |
| Plaintiff-Appellant, | D.C. No. 1:14-cv-00111-CSO |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Montana
Carolyn S. Ostby, Magistrate Judge, Presiding

Submitted December 20, 2017[**]

Before: THOMAS, Chief Judge, and TROTT and SILVERMAN, Circuit Judges.

Rachel Yanchar appeals the district court's affirmance of the Commissioner

of Social Security's denial of her application for disability insurance benefits under

Titles II and XVI of the Social Security Act. We have jurisdiction under 28 U.S.C.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

§ 1291 and 42 U.S.C. § 405(g). We review de novo, *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016), and we affirm.

The administrative law judge ("ALJ") did not err in discounting Yanchar's testimony concerning the extent of her symptoms and their limiting effects. The ALJ applied the requisite two-step framework and cited specific, clear, and convincing reasons for discounting portions of her testimony. *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). The ALJ pointed to evidence that Yanchar had exaggerated her symptoms, the fact that Yanchar's reported daily activity level contradicted her alleged limitations, the paucity of evidence that Yanchar sought medical treatment for her symptoms, and the lack of supporting objective medical evidence. For example, despite her reports of disabling pain, the medical evidence indicated Yanchar reported decreased pain. Further, a physical exam revealed Yanchar was not in distress and had a pleasant mood and affect despite reporting severe pain. Moreover, despite the diagnoses of depression and anxiety, the medical records do not provide specific functional limitations stemming from the diagnoses, and the medical evidence indicated Yanchar possessed adequate intellect and psychological authority to work.

Yanchar asserts the ALJ erred in finding her daily activities were inconsistent with her claimed limitations because her statement that she rarely left

the house did not conflict with her medical records stating she walked for exercise, as she walked inside her house. If finding inconsistency between these pieces of evidence was error, it was harmless because Yanchar does not demonstrate how the location of where she walked affects the ultimate nondisability determination. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). In addition, the ALJ pointed out other inconsistencies in the record, such as how Yanchar's claims that she could not walk or perform household chores conflicted with her reports to medical professionals that she "walked daily and was performing household chores for exercise." Thus, any error was harmless. *See id.*; *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).

Yanchar also objects to the ALJ's reliance on Yanchar's relatively sparse medical treatment history, contending that she was financially unable to obtain medical care in 2009 and 2010, and so lack of treatment is not a valid reason to discount her testimony. Indeed, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds." *Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017) (citation omitted). However, the ALJ also underscored Yanchar's lack of treatment for her alleged back pain in 2011 and 2012, after the period she claimed she was unable to pay for medical care. Therefore, even if the ALJ erred by citing a lack of medical care

3

during Yanchar's period of financial hardship, he also provided valid examples, rendering any error harmless.

Yanchar's contention that the ALJ was required to develop the record further if he doubted the credibility of her testimony also fails, as the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Here, the record was adequate and allowed the ALJ to assess the credibility of Yanchar's testimony.

Despite her arguments to the contrary, Yanchar also has not demonstrated that the ALJ committed harmful error at Step Two of the sequential analysis by not including depression among Yanchar's severe impairments. Although Yanchar points to evidence that she was diagnosed with depression, she does not identify any functional limitations stemming from these diagnoses that the ALJ failed to consider. Step Two is meant to serve as "merely a threshold determination . . . to screen out weak claims," and the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). The ALJ considered the four broad functional areas used to evaluate a claimant's mental disorders in the Listing of Impairments along with Yanchar's mental capabilities in his assessment

of Yanchar's RFC. The ALJ determined Yanchar's medically determinable mental impairments were non-severe. Because the ALJ ultimately decided Step Two in Yanchar's favor, and she has not shown any way in which she was prejudiced, any error was harmless. *See id.* at 1049.

The ALJ did not err at Step Three by finding Yanchar's impairments did not meet or medically equal a listed impairment. While Yanchar asserts she meets Listing 1.04 for disorders of the spine, she has failed to present evidence of at least one of the listing's criteria. Specifically, the positive straight-leg raising tests in the record do not specify whether she tested positive both sitting and supine, as required to qualify under Paragraph A of the listing, and she has not presented evidence showing that her difficulty ambulating "limits the functioning of both upper extremities," as required to qualify under Paragraph C of the listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.04, 1.00(B)(2)(b). Because Yanchar has not established that she fulfills all of the specified medical criteria, the ALJ did not err in finding she did not meet Listing 1.04. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Yanchar's argument that the ALJ erred by not determining whether her alleged symptoms were medically equivalent to a listing also lacks merit. The ALJ "is not required to discuss the combined effects of a claimant's impairments or

5

compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 683, 679 (9th Cir. 2005). Yanchar has not offered a cogent theory of equivalence by pointing to particular listings to which she believes her impairments are equivalent or by specifying which particular medical findings would support an equivalence finding. As a result, the ALJ was not required to make a medical equivalency determination. *See id.*

Yanchar's challenges to the ALJ's evaluation of the medical evidence also fail. Yanchar contends the ALJ erred by ignoring medical evidence concerning her back pain symptoms and difficulty walking, and that disregarding this evidence led the ALJ to erroneously discount Yanchar's testimony. However, Yanchar's argument amounts to little more than claiming that because Yanchar's medical providers did not question the veracity of her reports of her symptoms that the ALJ was not permitted to discount her testimony. Instead, Yanchar invites the Court to reweigh the evidence. Determining the extent to which to credit a claimant's testimony is the ALJ's responsibility, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009), and he was not required to defer to Yanchar's physicians on that point. Yanchar does not demonstrate any specific way in which the ALJ erred in assessing the medical evidence, and so we must uphold the ALJ's

rational interpretation. *See Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Yanchar's allegation that the ALJ neglected his duty to develop the record concerning her medical evidence also lacks merit. Yanchar does not identify any particular ambiguity or insufficiency in the medical evidence upon which the ALJ relied in making his decision that would trigger the ALJ's responsibility to develop the record further. *See McLeod*, 640 F.3d at 885.

Yanchar's assertion that the ALJ erred by requiring Yanchar to show a medically "determined" impairment, as opposed to a medically "determinable" impairment, also fails. Yanchar contends that while her medical impairments were not evidenced by care in 2009 or 2010, evidence from 2012 and from before her alleged onset date establish she has a medically determinable impairment. Nevertheless, the ALJ discussed evidence both preceding and during the alleged period of disability, some of which contradicts Yanchar's view of the record, and relied on evidence indicating her condition had improved in making his decision. Because it is the province of the ALJ to resolve conflicts in the medical evidence, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008), the Court will not second-guess the ALJ's analysis.

Yanchar also has not shown the ALJ erred at Step Four of the sequential analysis. Her allegations of error at this stage echo her arguments concerning earlier steps in the ALJ's analysis. Yanchar has failed to demonstrate the ALJ committed harmful error concerning previous steps in his evaluation, and so her arguments dependent upon other errors lack support.

**AFFIRMED.**