**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| APRIL AGATUCCI, | No.    15-35344 |
| Plaintiff-Appellant, | D.C. No. 6:13-cv-01626-MC |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Submitted December 27, 2017**

Before: THOMAS, Chief Judge, and TROTT and SILVERMAN, Circuit Judges.

April Agatucci appeals the district court's affirmance of the Commissioner

of Social Security's denial of her application for disability insurance benefits under

Titles II and XVI of the Social Security Act. We have jurisdiction under 28 U.S.C.

---

\*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

§ 1291 and 42 U.S.C. § 405(g). We review de novo, *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016), and we affirm.

The administrative law judge ("ALJ") did not err by affording substantial weight to the opinions of state agency physician Dr. Eder and examining psychologist Dr. Trueblood while giving little weight to the January 2012 opinion of treating physician Dr. Nelson. The ALJ explained in great detail that Dr. Nelson's own findings from 2007 through 2012 and the record as a whole were more consistent with Agatucci performing medium exertional work than Dr. Nelson's January 2012 opinion that Agatucci was not capable of performing sustained sedentary or light work.

Agatucci challenges the ALJ's evaluation of Dr. Nelson's January 2012 opinion on several fronts; however, all of her challenges lack merit. First, Agatucci contends Dr. Nelson's opinion is uncontradicted because only non-examining physicians—including Drs. Whitehead and Trueblood—offered conflicting opinions, and their opinions cannot constitute substantial evidence. However, Drs. Trueblood and Whitehead did examine Agatucci in person. They did not merely read reports. As the ALJ noted, Dr. Trueblood performed a "thorough examination" of her. In addition, the Court has "consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician,

based in part on the testimony of a nontreating, nonexamining medical advisor," when the ALJ has pointed to additional evidence in support of this decision, as the ALJ did here. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).

Agatucci's contention that assessments from Drs. Whitehead and Trueblood, who are mental health doctors, cannot contradict Dr. Nelson's opinion because Dr. Nelson considered both mental and physical symptoms also lacks merit. The case Agatucci cites for support, *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir. 1985), held that the opinions of doctors who evaluated the claimant's physical symptoms could not contradict the opinion of a doctor who had evaluated the claimant's mental health. Here, the ALJ relied upon evidence from mental health doctors and from other doctors who assessed her physical health including Dr. Eder that contradicted Dr. Nelson's opinions concerning Agatucci's mental and physical limitations, respectively.

Agatucci maintains the ALJ erred by finding Dr. Nelson's January 2012 opinion lacked supporting evidence, asserting that Dr. Nelson's treatment notes actually support his opinion Agatucci is unable to work. This argument ignores the ALJ's extensive examination of Dr. Nelson's treatment notes from 2007 through 2012 and the disconnect the ALJ noted between Dr. Nelson's consistently normal

3

functional findings, such as normal gait and range of motion, and his January 2012 opinion that she was unable to perform sedentary work.

Agatucci's argument that the ALJ neglected his duty to fully and fairly develop the record by not recontacting Dr. Nelson to inquire about the basis for his January 2012 opinion also falls short. The "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (citation omitted). The record was adequate to enable the ALJ to evaluate the evidence concerning the severity of Agatucci's symptoms.

Agatucci's contention that the ALJ erred by rejecting Dr. Nelson's opinion because he is not a mental health specialist also fails. The ALJ did not reject his opinion on these grounds but rather afforded greater weight to Dr. Trueblood's opinion, citing his expertise in mental health as one reason for doing so. This adheres to the agency's regulations, which "give more weight to the . . . opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

Agatucci asserts the ALJ erred by relying on the opinion of consulting physician Dr. Eder, who stated that Agatucci appeared capable of sustaining

4

medium level work on the basis of objective findings alone, because the residual functional capacity ("RFC") must encompass information beyond the objective medical findings. However, the ALJ relied upon more than just Dr. Eder's opinion in formulating the RFC, including other medical evidence and subjective reports. Therefore, the ALJ did not err in this regard.

The ALJ did not commit harmful error in discounting Agatucci's testimony concerning the extent of her symptoms and their limiting effects. The ALJ applied the requisite two-step framework and cited specific, clear, and convincing reasons for discounting portions of Agatucci's testimony. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ cited inconsistencies within Agatucci's testimony, inconsistences between her alleged symptoms and daily activities, Agatucci's failure to seek and follow prescribed treatment, and a lack of supporting objective medical evidence.

Agatucci argues the ALJ erred by citing her missed mental health appointments and lack of current treatment as showing her unwillingness to seek and follow treatment, countering that she only missed two appointments for unexplained reasons and that she cannot currently afford treatment. However, this does not explain her "expressed reservations about pursuing regular psychiatric care and reducing her opiate . . . medication, despite the urgings" of her doctors,

evidence upon which the ALJ relied in drawing his conclusion. The Court upholds the ALJ's reasonable interpretation of this evidence. *Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Agatucci also maintains the ALJ improperly cited her conservative course of treatment as grounds for discounting her testimony concerning the severity of her symptoms because the only possible course of treatment for her symptoms was conservative in nature. We uphold ALJ's rational interpretation that, because Agatucci's condition did not necessitate surgery, her symptoms were not as debilitating as she alleged. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted); *Ryan*, 528 F.3d at 1198.

The ALJ did not commit harmful error by discounting lay testimony from Agatucci's husband. The ALJ did improperly reject Mr. Agatucci's testimony because he lacks medical training and is not an impartial third party, both of which the Court has explained are not valid reasons for rejecting lay testimony. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).

However, the Court has deemed the ALJ's third reason for discounting Mr. Agatucci's statements, its inconsistency with the medical evidence, as a germane reason for discrediting lay witness testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Because the ALJ provided at least one germane reason,

the Court upholds his decision. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). In addition, any error was harmless, as Mr. Agatucci described the same limitations Agatucci herself detailed, and the ALJ's reasons for rejecting Agatucci's testimony "apply with equal force to the lay testimony" of her husband. *See Molina*, 674 F.3d at 1122.

Finally, the ALJ's Step Five findings were supported by substantial evidence. Agatucci's assertion that the ALJ erred in posing the hypothetical questions to the vocational expert by omitting limitations described in the lay witness testimony, Dr. Nelson's opinion, and Agatucci's own testimony, depend upon the errors she alleged concerning prior steps in the sequential evaluation. Because Agatucci has not shown the ALJ committed harmful error previously in his analysis, this argument lacks support.

**AFFIRMED.**