NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 6, 2018
Decided August 21, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-2785

| | |
|---|---|
| DAVID BALDWIN, II, <br> *Plaintiff-Appellant*, | Appeal from the United States District <br> Court for the Central District of Illinois. |
| *v.* | No. 16-cv-2249 |
| NANCY A. BERRYHILL, Acting <br> Commissioner of Social Security, <br> *Defendant-Appellee*. | Eric I. Long, <br> *Magistrate Judge*. |

**O R D E R**

David Baldwin applied for disability insurance benefits based on pain caused by his rheumatoid arthritis. An administrative law judge found him disabled through May 15, 2014, at which time the judge determined that his residual functional capacity had improved enough to enable him to work. The district court upheld the agency's determination, and Baldwin has now appealed. We conclude that the ALJ's finding of improvement is not supported by substantial evidence, and so we vacate the judgment and remand to the agency for further proceedings.

**I**

In January 2012 Baldwin was 31 years old and working as a machine operator. He experienced sudden onset of rheumatoid arthritis at that time. He tried a number of treatments. In August he underwent surgery to relieve pain in his left shoulder—the first of three similar operations. He returned to work after the first procedure, but his pain persisted. He was able to work with accommodations until January 2013, when he stopped because of his constant pain and fatigue. He applied for disability insurance benefits the following week. In August 2013 rheumatologist Mehmoodur Rasheed described Baldwin's arthritis as "severe." In December of that year, Baldwin was diagnosed with a depressive disorder.

On May 16, 2014, Baldwin's oncologist (whom he had seen for some abnormal lymph nodes) observed that his arthritis "seem[ed] to be much improved." The doctor added that "[h]is pain is minimal. He has no additional complaints." But this report was flatly contradicted by complaints of pain that Baldwin made to Dr. Rasheed just two days later. Baldwin told Dr. Rasheed that his joints typically hurt him in the week leading up to his monthly dose of arthritis medication. He also complained of morning stiffness and pain in his neck and shoulder. His medication for depression, he mentioned, helped with his mood, but not with his pain.

Over the summer Baldwin experienced some relief, thanks to different medications and pain-management techniques. In June he told his psychologist that electrical stimulation provided "intermittent benefit" and that hypnosis reduced his pain. In July he reported to his primary-care physician that he believed that his depression medication was easing his pain. In August, Dr. Rasheed noted that Baldwin's joint symptoms "seem to be better." During a physical examination, Baldwin had tenderness but a normal range of motion in his neck and left shoulder. He was able to raise his right arm above his shoulder without difficulty, and his joints were not overly sensitive to touch. Nonetheless, he still complained of "quite a bit of pain" in his shoulder, neck, and back.

Dr. Rasheed observed further improvement in December. During a physical exam, Baldwin could raise his right arm without difficulty, walk without support, and had mild or no tenderness in his joints. The doctor wrote that Baldwin had "some mild pain" in his right elbow, "some pain" in his hands and wrists, pain in his neck and back, yet a significant overall pain score of 7 out of 10. (This is a scale on which 0 indicates "pain free," and 10 represents pain so severe that the person passes out. See, *e.g.*, Compass Rehabilitation Center, Medical Pain Scale 0–10, at http://compass.rehab/ patient-resources/medical-pain-scale (visited on Aug. 18, 2018).) At the request of

Baldwin's attorney, Dr. Rasheed referred Baldwin for a functional-capacity evaluation with physical therapist Matthew Frankie.

That evaluation revealed that different levels of pain in Baldwin's back, shoulders, and joints limited his movements, but that he was still able to perform many tasks. The pain left him unable to reach, bend, climb stairs or ladders, squat, or crawl. On the other hand, he was able occasionally to lift 27-pound objects from the floor to his waist, and he could lift 15-pound objects frequently. He also could push 80 pounds and pull 89 pounds for 40 feet. He could sit or stand for 30 minutes before needing to shift positions. Based on that test, Frankie concluded that Baldwin's "physical demand level falls in the light to medium category according to the U.S. Department of Labor standards."

## II

At his administrative hearing later in December, Baldwin testified that his pain persisted despite treatment. On "bad days," which "seem[ed] to outweigh the good days," he could not climb the stairs in his home. He spent one out of three days, he estimated, reclining or sleeping most of the time. Medication helped, but it did not rid him of the pain. He obtained intermittent relief through physical therapy or electrotherapy (that is, use of a transcutaneous electrical nerve stimulation unit).

A vocational expert was available at the hearing. The ALJ asked the expert a hypothetical question about a person who could perform light work with several restrictions, including the need to alternate between sitting and standing every 30 minutes for at least five minutes at a time. The expert responded that such a person could not perform Baldwin's past job as a machine operator, but that the person could work as a price marker and router, and that there were substantial numbers of those jobs in the national economy.

The ALJ concluded that Baldwin became disabled on January 14, 2013, and that his disability persisted through May 15, 2014, after which it ended. By May 16, 2014, the ALJ thought that Baldwin once again could perform a limited range of light work, subject to some limitations. See 20 C.F.R. § 404.1594(b)(4)(i), (f). In support of that opinion, the ALJ pointed to the oncologist's May 16 observation that Baldwin's arthritis seemed on that occasion to be "much improved" and that Baldwin was in "minimal pain." The ALJ also cited Baldwin's July statement that his depression medication provided relief, and Baldwin's statements that hypnosis and electrotherapy provided intermittent benefits. Finally, the ALJ found support for his conclusion in Frankie's December assessment that Baldwin could perform light-to-medium work with a sit-stand limitation. Baldwin appealed that decision to the Social Security Appeals Council.

While Baldwin's appeal was pending, Frankie—apparently on his own initiative—submitted to the Council successive opinions, all indicating that Baldwin's residual functional capacity was more restricted than Frankie originally had reported. In his first addendum, Frankie suggested that Baldwin's pain and physical deficits were severe enough to prevent him from performing light-to-medium work full time, and so Baldwin was actually limited to sedentary work. Two weeks later, Frankie filed a second addendum revising the latter conclusion; in it, he opined that Baldwin could not work even at the sedentary level because he required additional breaks and would miss at least one to two work days per month for treatment.

The Appeals Council summarily denied review, stating only that Frankie's addenda "[did] not provide a basis for changing the Administrative Law Judge's decision." Because the Council denied review, the ALJ's decision was the final decision of the Acting Commissioner. See *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

Baldwin next sought judicial review under 42 U.S.C. § 405(g). A magistrate judge, presiding by consent of the parties, 28 U.S.C. § 636(c), upheld the Acting Commissioner's decision. The court held that the Appeals Council was within its rights to deny review because, although Frankie's addenda were "new" in that they were not previously available, they were not "material" because they contained Frankie's opinion about Baldwin's residual functional capacity—a determination reserved to the agency. The court added that the ALJ properly considered the evidence in determining that Baldwin's residual functional capacity improved enough to permit work after May 15, 2014.

## III

Although Baldwin complains about the Appeals Council's refusal to attach any weight to Frankie's two revised opinions, we see no reversible error on that point. Although the addenda were technically "new," meaning that Frankie had not yet written them at the time of the hearing, they did not rest on "new" evidence—they merely reflected Frankie's reconsideration of existing evidence. See *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009) (applying 42 U.S.C. § 405(g)). To the extent Baldwin wanted the agency to rely on Frankie's own assessment of Baldwin's residual functional capacity, he was asking for something it could not do. That determination is reserved for the agency, 20 C.F.R. § 404.1527(d)(2), and we do not find it reasonably probable that Frankie's opinion would have swayed the ALJ. See *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).

We therefore move on to Baldwin's central argument: that the ALJ committed several errors in assessing his residual functional capacity after May 15, 2014. Baldwin

contends that the ALJ cherry-picked from the medical records to spotlight apparent improvements in his condition and to exaggerate the degree to which he was obtaining relief from his pain.

Although we must uphold the Commissioner's decision if it is supported by substantial evidence, see 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971), that standard calls for more than a rubber-stamp. As we have noted in the past, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419 (7th Cir. 2010). Only then can we be sure that the final determination reflects the ALJ's assessment of all of the evidence in the record.

This record, unfortunately, reveals that the ALJ cherry-picked the evidence in determining that Baldwin's condition improved after May 15, 2014. The judge seized on the oncologist's observation of May 16, 2014, to the effect that Baldwin's pain was "minimal" as evidence that his condition had improved. Yet two days later, Baldwin complained to Dr. Rasheed of pain in his joints, neck, and shoulder. And that was not an isolated incident: he continued thereafter regularly to complain of pain to both his psychologist and Dr. Rasheed. Compare *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (ALJ impermissibly cherry-picked evaluation based on highest functioning score when claimant had lower scores two weeks later). Moreover, the ALJ erred by relying on Baldwin's July statement that his depression medication was easing his pain, given Baldwin's report to Dr. Rasheed on May 18 that the same medication was *not* relieving it. The ALJ also highlighted Baldwin's intermittent relief with the use of electrotherapy and hypnosis, beginning in June 2014, but intermittent relief does not show that Baldwin could manage full-time work. See 20 C.F.R. § 404.1594(c)(3)(iv); *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016). Finally, Frankie's December assessment, which suggested that Baldwin could perform light-to-medium work with some restrictions, sheds little light on what Baldwin's functional capacity was in May. See 20 C.F.R. § 404.1594(g)(1) (disability ends in month in which evidence shows applicant is no longer disabled).

For the sake of completeness, we note that the ALJ did not err when he decided to ignore the finding from an October 2013 psychological evaluation of Baldwin indicating that he was moderately limited in concentration and pace. The ALJ relied instead on the psychologist's explanation in the narrative assessment in the same report that Baldwin had the concentration and pace "necessary to fulfill a normal workday."

And the ALJ correctly observed that medication has improved Baldwin's mood and mental health since the 2013 assessment.

Focusing on Baldwin's physical impairments, however, we conclude that the agency must take another look at the date (if any) on which Baldwin was no longer disabled. We thus VACATE the judgment and REMAND for further proceedings.